## Commonwealth *vs.* Dwight White.

No. 98-P-1216.

Essex. April 14, 1999. - July 28, 1999.

Present: Greenberg, Lenk, & Spina, JJ.

*Controlled Substances. Practice, Criminal,* Preservation of evidence, Loss of evidence by prosecution, Dismissal. *Due Process of Law,* Loss of evidence by prosecution. *Evidence,* Scientific test.

In a criminal case in which the Commonwealth negligently and inadvertently destroyed cocaine seized from the defendant's apartment, after a specific request had been communicated to the prosecutor before retrial that the evidence be preserved for an independent analysis, the defendant demonstrated a reasonable possibility that the destroyed evidence "might have" affected the verdict [433-435]; the appropriate remedy, in circumstances in which the Commonwealth would have been precluded from admitting in evidence the weight of the cocaine seized, was to accede to the defendant's request that his conviction be reduced to one under G. L. c. 94C, § 32E(*b*)(2), and that the matter be remanded for resentencing thereon [435-436].

INDICTMENT found and returned in the Superior Court Department on January 8, 1991.

Following review by this court, 37 Mass. App. Ct. 757 (1994), a motion to dismiss or to suppress evidence was heard by *Richard E. Welch, III,* J., and the case was tried before *Christine M. McEvoy,* J.

*Benjamin H. Keehn,* Committee for Public Counsel Services, for the defendant.

*Robert J. Bender,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. In his pursuit of relief from a conviction of trafficking in over 200 grams of cocaine in violation of G. L. c. 94C, § 32E(*b*)(4), the defendant has been here before. *Commonwealth* v. *White,* 37 Mass. App. Ct. 757 (1994). On that occasion, we reversed his conviction and remanded the case for a

new trial. After the release of that decision, on January 13, 1995, the defendant's counsel notified the prosecutor of his intent to conduct an independent analysis of the controlled substances involved and demanded that the evidence be preserved for that purpose. Despite that request the evidence was destroyed. On the basis of that destruction, the defendant moved to dismiss the indictment or, in the alternative, to suppress the government's evidence of the cocaine's weight. On April 26, 1996, before the second trial commenced, a Superior Court judge denied the defendant's motion. Retrial took place, and a Superior Court jury found the defendant guilty. We decide that the government's destruction of the cocaine seized from the defendant's apartment, after a specific request to preserve it had been communicated to the prosecutor, deprived the defendant of a defense that he might have had.

While the defendant's first appeal from his original conviction was pending in 1994, defendant's counsel, through discovery, acquired the State laboratory analysis of the cocaine that the police obtained from the defendant's apartment by means of a controlled buy. That analysis indicated that the cocaine had an assay of forty-six per cent of pure cocaine. What made this noteworthy was that nearly all of the cocaine subsequently seized from the premises under a warrant had an unmarketable assay of only nine per cent. According to the defendant's proffer, which was made during the evidentiary hearing on his motion, the cocaine was of such poor quality as to be worthless to any prospective user.

The defendant suggests that the police impermissibly added diluents, other than inositol found by the State chemist, to the cocaine mixture seized from his premises to increase the weight of the mixture to over 200 grams. The cocaine involved in the controlled buy presumably originated from the same "stash" seized by the police at the time of the subsequent search. It was the defense's theory that the discrepancy between the relatively pure cocaine mixture from the controlled buy and the highly diluted mixtures procured in the subsequent search was strong evidence that the cocaine mixtures had been radically stretched before they were tested by the State crime laboratory. The suggestion that the police who executed the search warrant tampered with the cocaine was, to say the least, an alternative that few jurors would accept in the absence of evidentiary support. By independent analysis, the defendant hoped to prove

that some of the powder seized by the police was pure inositol or some other diluent, and that it was mixed with a relatively small amount of cocaine at some point after the seizure and prior to the laboratory analysis.

The motion judge found that, in the summer of 1995, after counsel's letter was received by the prosecutor, State police Officer William Canty, without conferring with the District Attorney's office, ran a computer check that showed the defendant's conviction. The data retrieved did not reveal that the judgment of conviction had been reversed. Canty placed the defendant's case on a list given to a clerk of the Lynn District Court who "signed off" on it. On September 12, 1995, nine months after the defendant's demand for preservation, Canty gave the cocaine to the narcotics inspection unit which destroyed it all the following week. The prosecutor learned of the mishap about two weeks later when, in the course of preparation for the second trial, Canty told him that the seized contraband was no longer in existence.

At the motion hearing, State police chemist Barbara O'Brien testified that she had no independent memory of the manner in which the analysis was conducted. From her notes, she confirmed the presence of inositol. Altogether, seven bags of suspected cocaine seized from the defendant's premises were submitted by the State police for analysis: four bags found in a dresser drawer; two bags discovered inside the defendant's socks; and a bag created by one of the officers who seized white powder from an open saucer. The seven bags, with their contents, weighed approximately 277 grams. Each bag varied with respect to the percentage of pure cocaine from a low of seven per cent to a high of thirty-two per cent.

When asked whether she tested all seven bags in the same way, O'Brien confirmed her standard procedure. She would open each bag separately, and then she would pour out the contents of each open bag onto a clean weight dish or glassine paper which would be placed on a balance scale. After recording the total weight of that sample, she would take less than a gram of it and put that amount into a test tube for analysis of the contents. The same procedure was followed with each of the seven bags, and only the percentages of cocaine and inositol were recorded. At trial, O'Brien acknowledged that while her report referred to inositol as a diluent, she did not determine whether any other cutting agent was present in any of the bags.

Other evidence suggests that an independent analysis might have supported a "stretching defense." Although some of the cocaine mixture had been cut with inositol, no container of inositol was found in the premises during the search.

The motion judge recognized that the discrepancy between the purity of the cocaine involved in the "controlled buy" and the purity of the stash gave the defendant a prima facie basis for exploring a "stretching" defense. He also found that the defendant "promptly and properly notified the District Attorney's office of the desire to preserve the drugs for testing." He concluded, however, that the destruction of the cocaine, "even though in technical violation of G. L. c. 94C, § 47A,[1] was done in complete good faith." He ascribed the mishap as "an innocent failure to communicate."

Finally, the judge mistakenly assumed that, even if the defendant had been able to conduct an independent analysis, it would only replicate the results of the State crime laboratory. On this basis alone, he determined that there was no prejudice.

1. *Evidence lost or destroyed by the police.* Massachusetts cases have confronted the question of an accused's deprivation of potentially exculpatory evidence on account of the government's actual destruction of the evidence. *Commonwealth* v. *Willie,* 400 Mass. 427, 432 (1987). A balancing test is employed in this situation. *Ibid.* First, the defendant must demonstrate that the lost or destroyed evidence was potentially exculpatory. If so, the second step is for the court to "weigh the culpability of the Commonwealth, the materiality of the evidence and the potential prejudice to the defendant." *Ibid.* See *Commonwealth* v. *Charles,* 397 Mass. 1, 14 (1986); *Commonwealth* v. *Henderson,* 411 Mass. 309, 310 (1991), citing *Commonwealth* v. *Olszewski,* 401 Mass. 749, 754-755 (1988), *S.C.,* 416 Mass. 707 (1993), cert. denied, 513 U.S. 835 (1994). When the evidence no longer exists and the defendant has made a specific request for it, the defendant need only show a reasonable possibility that the evidence was exculpatory. Put another way, the defendant is entitled to relief pursuant to the more favorable standard: whether access to the destroyed or lost evidence "might have" affected the verdict. *Commonwealth* v. *Sasville,* 35 Mass. App. Ct. 15, 26 n.11 (1993), citing *Commonwealth* v. *Tucceri,* 412 Mass. 401, 405 (1992).

---

[1]The second paragraph of G. L. c. 94C, § 47A, requires, in an ongoing case, a petition to the Superior Court, notice to defendant, and a hearing before evidence can be lawfully destroyed.

So far as the case before us is concerned, the absence of bad faith, as found by the motion judge and urged by the government as determinative, does not necessarily absolve the government. Negligence and inadvertence are less onerous standards than bad faith; however, they are the measures to be considered in the balancing test. *Commonwealth* v. *Cameron*, 25 Mass. App. Ct. 538, 548 (1988). An unfair trial may result when the police or prosecutor loses evidence despite good faith. *Commonwealth* v. *Olszewski*, 401 Mass. at 754 n.2.

Our cases have taken a stricter view of the consequences flowing from the government's failure to preserve material evidence than the Federal courts. The United States Supreme Court has decided that no Federal due process violation occurs from lost evidence in the absence of bad faith. *Arizona* v. *Youngblood*, 488 U.S. 51 (1988). However, the Supreme Judicial Court regards bad faith as simply one factor to be considered. *Commonwealth* v. *Henderson*, *supra* at 311 ("[t]he rule under the due process provisions of the Massachusetts Constitution is stricter than that stated in the *Youngblood* opinion"). In this case, the motion judge gave undue weight to the single factor whether there had been bad faith on the government's side. Specifically, the motion judge stated that "the defendant must establish a 'reasonable possibility based upon concrete evidence rather than a fertile imagination' [*Commonwealth* v. *Neal*, 392 Mass. 1, 12 (1984)] that access to the destroyed material *would have* produced evidence favorable to his cause" (emphasis added). He did not employ the less onerous test to be applied where a specific request to preserve the evidence has been made. See *Commonwealth* v. *Tucceri*, 412 Mass. at 407.

Here, there was a showing that the proffered evidence "might have" been significant. *Commonwealth* v. *Sasville*, 35 Mass. App. Ct. at 26 n.11. The defendant hoped to defend against the trafficking charge by showing that he had not possessed 200 or more grams of cocaine. Had the evidence been available, an independent analysis might have shown that the mixture contained some diluent other than the inositol found in the "controlled buy" sample. The presence of a second diluent in the stash could have corroborated the defendant's theory that the cocaine had been tampered with after the search and seizure. The prosecution was chargeable with the actions of the police for destroying the cocaine. See *Commonwealth* v. *Donahue*, 396 Mass. 590, 596 (1986); *Commonwealth* v. *Martin*, 427 Mass.

816, 823-824 (1998). In the circumstances of this case, where the defendant made a specific and timely request for preservation of the potentially exculpatory evidence and the government not only failed to make earnest efforts to preserve the evidence but actually destroyed it, the balance tips in favor of affording the defendant relief.

2. *The remedy.* The record reveals that the government failed to take steps to make sure that the defendant's specific request for the preservation of the evidence could be honored. The destruction of that evidence prejudiced the defendant because it "might have" supported a defense. Particularly where, as here, there is no dispute that the defendant possessed cocaine, we do not consider this oversight to be one that requires the ultimate sanction of dismissal with the consequent effect that stringent remedy has of infringing upon the public's right to see persons accused of crimes brought to trial. *Commonwealth* v. *Cinelli,* 389 Mass. 197, 210, cert. denied, 464 U.S. 860 (1983). See *Commonwealth* v. *Woodward,* 427 Mass. 659, 680-681 (1998). In acknowledgment of the government's role in destroying the evidence, the motion judge required the State chemist to be present to testify at trial concerning the testing procedures that were used. The judge further determined that the defendant would be entitled to introduce at trial the fact that the drugs were destroyed. These remedial measures were inadequate because they did not permit the defendant to explore the stretching defense in any meaningful way. *Commonwealth* v. *Sasville,* 35 Mass. App. Ct. at 16, 23. Contrast *Commonwealth* v. *Henderson,* 411 Mass. 309 (1991). The motion to suppress should have been partially granted.

In these circumstances, if the case were retried, the government should be precluded from admitting evidence about the weight of the cocaine mixture seized, thus leaving the defendant exposed to the charge of possession of between twenty-nine and thirty grams of pure cocaine[2] with intent to distribute. See, e.g., *Commonwealth* v. *Gliniewicz,* 398 Mass. 744, 749 (1986) (reversed because destruction of evidence during scientific testing made defense testing impossible; at new trial government was to be prohibited from making use of the tests); *Commonwealth* v. *Olszewski, supra* at 757; *Commonwealth* v. *Her-*

---

[2]This number is obtained by multiplying the weight of each of the seven bags of cocaine mixture by the particular percentage of pure cocaine found therein and then adding the seven numbers together.

*nandez*, 421 Mass. 272, 280 n.8 (1995). We conclude that the only fair disposition of this case is to accede to the defendant's request to reduce the conviction to one under G. L. c. 94C, § 32E(*b*)(2), and to order that he be resentenced under that statute, which carries a five-year mandatory minimum sentence.[3,4]

The judgment is vacated. A new judgment is to enter on the lesser included offense of trafficking in over twenty-eight, but less than one hundred, grams of cocaine in violation of G. L. c. 94C, § 32E(*b*)(2). The case is remanded for the defendant's resentencing thereunder.

*So ordered.*

---

[3]It would be erroneous in the present circumstance to adhere to the established rule that the weight of a controlled substance includes the weight of the substance plus the weight of any impurity or any mixing ingredient. *Commonwealth* v. *Beverly*, 389 Mass. 866, 869 (1983); *Commonwealth* v. *Nutile*, 31 Mass. App. Ct. 614, 623 (1991). Had the defendant been successful, he might have established that the police were responsible for "stretching" the cocaine. The other obvious possibility — that the defendant himself diluted the pure cocaine sometime after the controlled buy and before the search and seizure — would present a jury question. As a result of the destruction of the contents of the bags, the issue cannot be resolved by a retrial of this case.

[4]Because of our disposition of this issue, we need not address the remaining issue raised by the defendant.