Fabricant, J.
INTRODUCTION
Defendant Carlos Tomayo is charged with possession of cocaine with intent to distribute, in violation of G.L.c. 94C, §32. During a ten-year period when he was on default, the cocaine and certain other evidence were destroyed. Claiming that the destruction of evidence deprives him of access to potentially exculpatory material, thereby denying him due process, he now seeks dismissal of the charge, or in the alter native, exclusion of evidence regarding the missing material. For the reasons that will be explained, these motions will be denied.
BACKGROUND
The Commonwealth represents that its evidence at trial would be, in substance, as follows. On November 22, 1988, a maintenance worker was fixing a leak in the ceiling of the basement of the Malden apartment where the defendant lived. The worker found two aluminum-foil packages containing plastic bags filled with a white rock substance. He called the Malden Police Department, and Sergeant David Ritchie and Inspector John Rivers responded. In the area of the basement ceiling where the maintenance worker had discovered the aluminum packages, Inspector Rivers found a white envelope with an elastic band around it, with the return address of the Bank for Savings in Malden. The envelope held money order receipts from various banks in various amounts, totaling over $15,000, all payable to “Oscar Tamayo,” whom the police learned was the defendant’s brother. As the officers were leaving the building, the defendant entered. Sergeant Ritchie approached and showed the defendant one of the receipts. The defendant responded that he had been in possession of such a receipt earlier, but had given it to someone whose name he could not remember. The officers arrested the defendant, and then obtained and executed a search warrant for his car, in which they found additional money order receipts payable to Oscar Tamayo. Subsequent laboratory analysis identified the substance inside the plastic bags as 175 grams of cocaine with a 96% purity. Eight fingerprints lifted from various of the materials found were identified as matching those of the defendant. One of the fingerprints was found on the bank envelope, one on one of the plastic bags, and one on each of six money order receipts.
The defendant was indicted in December 1988. At his arraignment on December 15, 1988, the Court set bail at $30,000 cash, and scheduled a pretrial conference for January 11, 1989. The defendant posted bail on December 16, 1988, but failed to appear on January 11, 1989, and a default warrant issued. More than a decade later, a tip to the State Police led to his arrest on the default warrant on September 17, 1999. New counsel then initiated discovery, through which he learned of the destruction of evidence. Thereafter, he requested independent analysis of the evidence, and then filed the present motions.
FINDINGS OF FACT
At an evidentiary hearing on these motions, the only witness presented was Inspector Rivers of the Malden Police Department. Lacking any present memory regarding the destruction of the evidence in this case, Inspector Rivers testified as to the general custom and practice of the Malden Police Department with respect to the preservation and destruction of physical evidence. His testimony in this regard was uncontested. Based on that testimony, along with documents provided, the Court finds as follows.
*419 Because of space limitations in its evidence storage rooms, the Malden Police Department has, and at all times relevant to this matter has had, a practice of periodically purging physical evidence kept in its evidence rooms. When a purge is being conducted detectives are assigned to examine all of the evidence in the evidence room, with each detective assigned to examine the items contained in particular bins, and to conduct an inquiry into the status of the particular case that each item of evidence relates to, so as to evaluate the likelihood that destruction of that evidence would in any way interfere with any continuing prosecution of the case. Based on the results of that inquiry, the assigned detective makes a determination as to whether each item of evidence should be retained or destroyed, and then submits the necessary paperwork to seek court orders authorizing destruction. In determining whether evidence in a particular case should be destroyed, the assigned detective considers the status of the case, including whether it is open or closed, whether a conviction is on appeal, whether the defendant has defaulted, and if so whether any available information indicates the likelihood of recovery. With respect to controlled substances, the detectives also consider the security risks involved in holding large quantities of such materials, and the sufficiency for purposes of prosecution of a certificate of analysis, in some instances along with a small sample of the material. With respect to non-drug evidence, the detectives follow the same process, giving consideration to such factors as the size of the items, how much other material is in the evidence room at the time, and other factors bearing on the need to maintain the items.
The Malden Police Department conducted its purging process in October of 1989, some nine months after the defendant’s default. The detectives assigned to examine the evidence involved in this case were Detectives Green and Chambers, both of whom are presently unavailable, one having retired and moved out of the Commonwealth, and the other on injury leave. In accord with the Malden Police Department’s usual practice, based on the evaluation made by Detectives Green and Chambers, and pursuant to authorization obtained from the Malden District Court, the cocaine was destroyed on October 12,1989. The fact of the defendant’s default was known to the police and available for consideration in decision-making with respect to destruction of the evidence. At the time of the hearing on the present motions, Inspector Rivers had a vague recollection that the police had received information from some unidentified source to the effect that the defendant had fled the United States and returned to his native Colombia; the evidence now available does not indicate whether Detectives Green and Chambers had that information, or what role, if any, it played in their decision.
As to the envelope, plastic bags, and bank receipts, although a search of the evidence rooms in September of 1999 failed to locate them, no record exists of their destruction. Based on the evidence presented, it appears that at some time between October of 1989 and September of 1999, a decision was made to destroy those additional materials, and they were destroyed, according to the same police department practice. The information now available provides no basis for any finding as to when during that ten-year period those materials were destroyed. The Commonwealth did maintain photocopies of the envelope and bank receipts, along with a photocopy of a report of Trooper Brian O’Hara regarding his identification of the fingerprints found.[1] The report indicates the item on which each fingerprint was found, and which of the defendant’s fingers Trooper O’Hara determined the print to match. The report does not, however, provide any further description of the fingerprints found, of the process or method of comparison, or of the basis for Trooper O’Hara’s conclusions. Neither the fingerprints themselves nor any photographs or other reproductions of them were preserved.
DISCUSSION
The destruction of material and potentially exculpatory evidence in a criminal case may implicate a defendant’s due process rights, entitling him to whatever relief is necessary effectively to safeguard those rights. See e. g. Commonwealth v. White, 47 Mass.App. 430, 435 (1999). Whether missing material is or is not exculpatory, however, maybe impossible to determine in its absence. See Commonwealth v. Olszewski, 401 Mass. 749, 753-54 (1988). Thus, to show that relief is warranted, a defendant must “establish a ‘reasonable possibility, based on concrete evidence rather than a fertile imagination,’ that access to the [destroyed material] would have produced evidence favorable to his cause.’’ Commonwealth v. Sasville, 35 Mass.App.Ct. 15, 20 (1993), quoting Commonwealth v. Neal, 392 Mass. 1, 12 (1984).
If the defendant succeeds in this showing, “the judge next must consider the appropriateness and extent of remedial action to ensure the defendant’s right to a fair trial.” Sasville, 35 Mass.App. at 21, citing Commonwealth v. Willie, 400 Mass. 427, 432 (1987). That determination depends on a balancing of the culpability of the government, the materiality of the evidence, and the potential prejudice to the defendant. See Commonwealth v. Charles, 397 Mass. 1, 14(1986). Culpability, for this purpose, does not depend on bad faith; negligent or inadvertent destruction may warrant relief if the evidence is sufficiently material and the potential prejudice sufficiently strong. Commonwealth v. White, 47 Mass. App. at 434.
To apply these standards here, the Court must consider first whether the defendant has met his initial burden of showing a reasonable possibility that access to the missing material would have produced evidence *420 favorable to him. This question warrants separate consideration as to each of three distinct materials: the cocaine, the original documents (of which photocopies remain available), and the fingerprints lifted from them.
As to the cocaine, the defendant asserts only that its destruction deprives him of the opportunity for independent analysis. He offers no basis to question the accuracy of the analysis performed by the state laboratory, the certificate of which would be admissible at trial pursuant to G.L.c. 111, §13 (1996); see also G.L.c. 94C, §47A (1997), Commonwealth v. Colon, 5 Mass.App.Ct. 775, 776 (1977). Nor does the defendant offer any other theory to suggest a reasonable possibility that the cocaine itself, or his access to it, would assist in his defense. Compare Commonwealth v. White, 47 Mass.App. at 434 (defendant entitled to relief based on showing that cocaine found in home was so dilute as to be unmarketable, while cocaine purchased in controlled buy was more pure, so that independent analysis might have yielded evidence supporting defense theory of police dilution). The defendant focuses his argument on the fact that the police destroyed the cocaine deliberately, and on his contention that they acted unreasonably in doing so only nine months after his default. These arguments, however, address the balancing of factors that arises only upon the defendant’s meeting his threshold burden. The defendant has failed to meet that burden with respect to the cocaine, and accordingly no balancing is warranted.
As to the original documents, the only suggestion the defendant offers to explain how they might assist him is that they might reveal the presence of fingerprints of other persons. The prospect seems entirely plausible, and indeed likely. But the defendant provides no hint as to how the presence of others’ fingerprints, along with his own, would assist in his defense. That others may have handled the materials does not indicate that he did not, nor does it undermine the inference that he did so in furtherance of a purpose to distribute the cocaine, or in connection with disbursement of its proceeds. At argument on the motions, the defendant also suggested that access to the documents might assist him in responding to evidence of his statement to the police acknowledging possession of a receipt of the sort found; he points out that the Commonwealth’s evidence leaves unclear whether his statement referred to one of the receipts found in the basement, one of those found in his car, or another receipt entirely, and suggests that the document shown to him might clear up that uncertainty. He does not, however, explain how the original documents would be preferable to the photocopies for this purpose. Regarding the original documents, as in the case of the cocaine, the defendant has failed to meet his initial burden, and no balancing is warranted.
The fingerprints present a more difficult issue. The accuracy of Trooper O’Hara’s conclusions as to the fingerprint comparisons is obviously of crucial importance to the prosecution, and anything the defendant could do to undermine the factfinder’s acceptance of those conclusions would certainly assist in his defense. The question thus becomes whether there is a reasonable possibility that his access to the fingerprints themselves would assist in that effort, either through independent comparison or through use in cross-examination of Trooper O’Hara. That question, in turn, depends on facts regarding the strength of the fingerprint identification, such as how many points of comparison were found and of what kind, the existence or absence of any inconsistent features in the prints compared, and the like. Neither side has offered any evidence on these points, and it appears that none may be available.
These same factual questions, and the existence or non-existence of evidence on them, raise the separate question of whether the Commonwealth will be able to present the foundation necessary for admission of the fingerprint identification. Fingerprint comparison, unlike chemical analysis of controlled substances, is not a mechanical process performed by laboratory instruments; it involves the exercise of judgment, based on expertise developed through training and experience. Fingerprint evidence is thus in the nature of expert opinion, the admission of which requires a showing that it is based on the application of a reliable scientific process, performed in accord with acceptable standards. See generally, Commonwealth v. Lanigan, 419 Mass. 15, 25-26 (1994). Although the reliability of fingerprint identification is firmly established and widely accepted as a general matter, see generally Commonwealth v. Buckley, 410 Mass. 209, 218-19 (1991); Commonwealth v. Phoenix, 409 Mass. 408, 413-14 (1991); Commonwealth v. Burns, 43 Mass.App.Ct. 263, 268 (1997), general acceptance does not obviate the need for a sufficient foundation for admission of a particular comparison in a particular case.
Thus, in order to introduce in evidence at trial the conclusions contained in Trooper O’Hara’s report, the Commonwealth will have to provide a sufficient preliminary showing as to how he came to those conclusions. At the hearing on the present motion, the prosecutor suggested that, if Trooper O’Hara lacks sufficient memory to make that showing, the Commonwealth would seek to meet this requirement through evidence of the custom and practice of the State Police Crime Laboratory in making fingerprint comparisons. Whether such evidence could suffice for this purpose is beyond the scope of the present motion, but might properly be considered on a pre-trial motion in limine. A ruling on such a motion excluding the fingerprint identifications for lack of foundation would, of course, eliminate any issue arising from the defendant’s lack of access to the fingerprints. A contrary ruling, on the other hand, would necessarily reflect a determination that the identification of the *421 fingerprints as the defendant’s had been shown to be reliable. That determination would refute the defendant’s suggestion, for which he offers no evidence, that access to the fingerprints might have supported his defense. The defendant would nevertheless remain free to cross-examine Trooper O’Hara as to his inability to support the identification by reference to the number or nature of points of comparison, and his lack of memory of the method and process of comparison used.
Having failed to provide any concrete evidence that access to the fingerprints would have assisted him, the defendant is not entitled to relief based on the destruction of evidence, and no balancing of factors is warranted. As discussed, however, this conclusion does not determine whether the fingerprint identifications will be admissible at trial; that determination will depend on resolution of issues that are beyond the scope of these motions.
CONCLUSION AND ORDER
For the reasons stated, the defendants’ Motion to Dismiss and Motion to Exclude Evidence are DENIED.

It is unclear whether these copies were retained by the police or by the District Attorney.