LIPEZ, Circuit Judge,
with whom CYR, Senior Circuit Judge, joins, dissenting.
The Massachusetts Appeals Court rejected MeCambridge’s Brady claim on two grounds. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). First, it ruled that McCambridge failed to object, as required, when the prosecutor refused to disclose the requested exculpatory evidence; namely, evidence of Doyle’s conviction for child abuse. Second, the appeals court ruled that McCam-bridge could show no prejudice resulting from the prosecutor’s wrongful suppression of that evidence. As a member of the panel that first reviewed this case, I concluded that the first ruling of the appeals court was contrary to clearly established federal law, and its second ruling constituted an unreasonable application of federal law. Despite the en banc proceedings and the thoughtful majority opinion, I continue to hold those views. I therefore respectfully dissent.
*44 I. Nondisclosure of Brady Material
The Supreme Court held as follows in Brady v. Maryland: “the suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The favorable evidence at issue here is the criminal record of the victim, Doyle.[1] McCambridge testified at trial that Doyle had become violent when McCambridge called Doyle a derogatory name that referred to Doyle’s conviction for child abuse. McCambridge also described an incident a few months prior to their automobile accident when he asked Doyle whether he had been convicted of child abuse and Doyle threatened to kill McCambridge if he were ever to mention the topic again. Therefore, Doyle’s criminal conviction related to McCambridge’s theory of self-defense because it provided an explanation for why Doyle might have become violent in the van. Additionally, McCambridge’s testimony regarding Doyle’s earlier threat afforded a significant evidentiary basis for the jury to assess McCambridge’s state of mind at the time of the shooting in determining whether McCambridge had been in reasonable fear of death or serious bodily injury.
In charging an unlawful killing, the Commonwealth assumed the burden of proving that McCambridge did not act in self-defense. See Commonwealth v. Reed, 427 Mass. 100, 691 N.E.2d 560, 563 (1998). The jury might not have found McCam-bridge guilty of any wrongful killing if it could not reject, beyond a reasonable doubt, McCambridge’s testimony that he reasonably perceived that he was in imminent danger of death or serious bodily harm. McCambridge’s credibility on this self-defense claim and his perception of Doyle’s alleged actions in the van and his earlier threat were thus potentially determinative of the verdict.
Doyle had, in fact, been convicted of and imprisoned for child neglect.[2] Yet, during trial, the prosecutor represented, both to defense counsel and the trial judge, that there was no such conviction on Doyle’s official record.
A. Requests, Representations, and Rulings Regarding the Exculpatory Evidence
The question of Doyle’s record arose several times during the trial. There were three discussions at the bench. The first sidebar took place on the third day of the trial when Doyle’s brother was testifying for the Commonwealth. Defense counsel informed the court and the prosecutor that McCambridge’s testimony regarding the altercation in the van would refer to his understanding that Doyle had been convicted of child abuse. Defense counsel stated that he saw no reason to question Doyle’s brother about the decedent’s conviction unless the prosecutor intended to take the position that McCambridge was lying. The prosecutor responded that he had not yet decided whether he would challenge McCambridge’s veracity regarding Doyle’s conviction. Due to the prosecutor’s ambivalence in this respect, the *45 defense was unable to resolve, at this point, whether to question Doyle’s brother about the conviction. Therefore, the court ordered that the witness be held over for possible later questioning by the defense. During this initial sidebar, the prosecutor was put on notice that the record of Doyle’s conviction tended to exculpate McCambridge by corroborating McCam-bridge’s anticipated testimony.
The second sidebar on the issue of Doyle’s conviction occurred during defense counsel’s direct examination of McCam-bridge. The prosecutor objected, on hearsay grounds, to McCambridge’s reference to the conviction when he described the threat allegedly made by Doyle a month before the killing. The court overruled the prosecutor’s objection on the ground that the testimony was not being offered for the truth of the conviction, but rather to establish McCambridge’s state of mind with respect to his fear of being killed by Doyle. The prosecutor replied that he thought the prejudicial effect of the evidence outweighed its probative value. The following exchange took place:
THE COURT: Do we have a conviction oh this charge?
DEFENSE: Do I have a certified copy of the conviction? I do not. But I assert that it is true, that he was convicted for this charge.... I don’t think my brother can say to your Honor that, in fact, he was not convicted. I’ve read the newspaper articles about it.
COURT: Has anyone checked his probation record?
PROSECUTOR: It just says — it doesn’t say what for. I have no idea what it’s for.
COURT: Okay. I’ll tell them that it’s not being offered for the truth of the matter.[3]
The key event during the second sidebar was the prosecutor’s representation that he had looked at Doyle’s record but had found it to be unclear.
The question of the conviction arose again shortly after the second sidebar. Despite the court’s ruling that the jury would be told that McCambridge’s testimony regarding Doyle’s conviction was not being offered for the truth of the matter, the prosecutor attempted to raise doubts about the fact of the conviction during his cross-examination of the defendant.
PROSECUTOR: You said that you had an argument with Mr. Doyle sometime prior to this in September and you said that he was involved in a problem of child molestation; is that correct?
DEFENDANT: I was told that....
* * *
PROSECUTOR: You know Mr. Doyle is deceased; isn’t that correct, sir?
DEFENDANT: He certainly is.
PROSECUTOR: He can’t refute your allegations right now; can he?
DEFENSE: Objection to that, your Honor.
THE COURT: Sustained.
This line of questioning foreshadowed the prosecutor’s reference to Doyle’s conviction in closing argument. It also explains the concern expressed by defense counsel at the third sidebar, held on the fourth day of trial just before the defense rested.
Dining this third and final sidebar, the court again asked the prosecutor whether he had checked Doyle’s record and the defense requested that the prosecution produce the record. Defense counsel also referred to the possibility of recalling Doyle’s brother to establish the conviction, *46 while indicating once again that he would not do so unless the prosecutor intended to argue that McCambridge was lying about it:
DEFENSE: He is maligning [the defendant’s] character, you know, as if there is some evidence in the case that he [the victim] wasn’t really in jail.
PROSECUTOR: He wasn’t in jail, Judge.
THE COURT: Did you check his record?
PROSECUTOR: He wasn’t in jail, Judge.
THE COURT: Was he convicted?
PROSECUTOR: No. No.
DEFENSE: Do you have his record? Let’s make it part of the—
PROSECUTOR: No. Pm not going to make it a part. That’s your case, sir.... So, as far as I know, he’s never been in jail a day of his life.
DEFENSE: Your Honor, I don’t have access to his criminal record.... So if he’s got a criminal record, this is an important issue, it seems to me. I would like it produced so we can all see whether or not he did have a criminal record and what, if anything, he was convicted of. I’m concerned about it. I don’t want to make it part of the case. On the other hand, I don’t want to open it up for argument that I didn’t prove that he had one and, therefore, my guy was lying.
PROSECUTOR: ... [A] a far as I know, there is no record that Mr. Doyle had any convictions.
THE COURT: What do you intend to argue?
PROSECUTOR: ... I am going to argue the facts of the case, Judge. That’s all Pm going to argue.
THE COURT: There’s inferences the jurors may want to draw from those facts. Are you—
PROSECUTOR: But you can’t draw an inference from something where there’s no conviction of a guy. I mean, the guy [McCambridge] gets up there and says [Doyle’s] done time when I know he hasn’t from the records that I’ve seen. And, if he’s got the records, he can—
THE COURT: But this was offered really for state of mind, not for the truth of it, not as to whether or not he did, in fact, do any time or anything like that. Therefore, I don’t know if it’s appropriate to argue whether he did or he didn’t. I am allowing it only for the state of mind of the defendant.
PROSECUTOR: Then that’s all I’m going to argue, Judge.
At the third sidebar, defense counsel expressed a willingness to keep proof of the existence of the conviction out of the case in compliance with the judge’s ruling. However, he also voiced concern that the prosecutor would use the absence of evidence confirming the conviction to cast doubt upon McCambridge’s credibility. In addition, defense counsel directly asked the prosecutor for Doyle’s record.
During these sidebar discussions, the prosecutor made two kinds of statements about Doyle’s criminal record. First, the prosecutor made qualified statements that Doyle had no criminal record by saying, “as far as I know.” However, at other moments, the prosecutor more definitively denied that Doyle had been convicted by answering the court’s questions with a simple “No, no” or saying, “I know he hasn’t [been convicted] from the records that I’ve seen.”
*47 Doyle’s criminal record was in the Criminal Offender Record Information System (CORI) of Massachusetts. A person’s CORI report lists his or her court appearances and convictions, if any.[4] The Commonwealth has represented that at trial the prosecutor had only the first page of Doyle’s three-page CORI report; the relevant conviction appears on the second page.[5] The Commonwealth argues that it did not violate the requirements of Brady for three reasons. First, it says that the prosecutor disclosed all the information he had about Doyle’s criminal record because the incomplete CORI print-out did not indicate that Doyle had ever been convicted of child abuse. Second, the Commonwealth contends that McCambridge should have been more diligent in requesting that the record be produced. Finally, the Commonwealth argues that McCambridge was required to object to the prosecutor’s nondisclosure of Doyle’s criminal record.[6]
1. Evidence in the possession of the government
Under well-settled law, a prosecutor’s duty to disclose exculpatory evidence extends beyond his or her personal knowledge of such evidence. See Kyles v. Whitley, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (describing the prosecutor’s duty “to learn of any favorable evidence known to the others acting on the government’s behalf in the case”). This duty exists because the prosecutor is the representative of the government in proceeding against a defendant in a criminal case. See Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (“The prosecutor’s office is ... the spokesman for the Government.”). Therefore, a state prosecutor may be held accountable, in appropriate circumstances, for the nondisclosure of Brady material in the possession of a state agency without regard to the prosecutor’s personal knowledge of the existence of that material. See Strickler, 527 U.S. at 282, 119 S.Ct. 1936 (discussing nondisclosure of Brady material “known to the Commonwealth” but apparently not to the prosecutor); United States v. Agurs, 427 U.S. 97, 111, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).
While the above cited cases involved evidence known to the police, their logic applies to the present case as well, since Doyle’s criminal record was in the CORI database maintained by the Commonwealth. The prosecutor requested Doyle’s criminal record from the Board, an agency established to coordinate the exchange of information among law enforcement personnel, including prosecutors and police officers. Based on the information he re *48 ceived from the Board, the prosecutor made inaccurate representations to the court and to the defense that Doyle had no criminal record. Under these circumstances, the Commonwealth is responsible for the nondisclosure regardless of the prosecutor’s actual personal knowledge. See Kyles, 514 U.S. at 437-38, 115 S.Ct. 1555 (holding that a prosecutor’s ignorance of exculpatory evidence not produced by a state agency does not insulate the government from responsibility for a Brady violation). Accordingly, the prosecutor’s statement that Doyle had no criminal record “as far as I know” does not relieve the Commonwealth of its obligations under Brady and its progeny because the prosecutor’s personal awareness of Doyle’s conviction is irrelevant.
2. Defense obligation to request exculpatory evidence
The Commonwealth argues that defense counsel should have filed a formal discovery request for Doyle’s criminal record. There is no legal support for this contention. Brady obligations apply independently of any request by the defense. See Strickler, 527 U.S. at 280, 119 S.Ct. 1936 (“[T]he duty to disclose [exculpatory] evidence is applicable even though there has been no request by the accused.”) (citing Agurs, 427 U.S. at 107, 96 S.Ct. 2392). The prosecutor in this case was on notice from the time of the first sidebar conference that evidence substantiating McCam-bridge’s claim that Doyle had a criminal record would be favorable to McCam-bridge’s theory of self-defense. There was no need for McCambridge to request that evidence specifically.
The Commonwealth also asserts that it was not obligated to disclose evidence of Doyle’s conviction because the defense could have found that evidence through a reasonably diligent investigation. See, e.g., United States v. Rodriguez, 162 F.3d 135, 147 (1st Cir.1998) (“The government has no Brady burden when the necessary facts ... are readily available to a diligent defender.”). However, as noted, McCam-bridge could not access the CORI database without a court order. See Mass. Gen. Laws ch. 6, § 172. Moreover, the Commonwealth’s argument about the ready availability of evidence misses the point in an important way. This was not a case where the defense simply refused to look for evidence it knew existed and relied on the prosecution to disclose that evidence. Rather, the prosecutor misrepresented, to both defense counsel and the court, that the exculpatory evidence did not exist. Defense counsel was entitled to rely on that representation. See Strickler, 527 U.S. at 283 n. 23, 119 S.Ct. 1936. Under these circumstances, McCambridge was not obligated to inquire further.
The Commonwealth argued before the panel that the prosecutor’s statements that Doyle had no criminal record “as far as I know” should have alerted defense counsel to the possibility that such a record did exist but was simply not personally known to the prosecutor. Because the prosecutor expressed this uncertainty, the Commonwealth asserted, McCambridge and his counsel should have been more diligent in confirming whether the prosecutor’s qualified statements were, in fact, true. The Commonwealth cites no authority for this argument, and I have found none. Under well-settled law, as I have explained, Brady obligations apply to a prosecutor’s conduct even when the defense has not sought discovery of the exculpatory evidence. See Strickler, 527 U.S. at 280, 119 S.Ct. 1936; Agurs, 427 U.S. at 107, 96 S.Ct. 2392. Moreover, McCambridge’s counsel reasonably relied upon the prosecutor’s representations that Doyle had never been convicted, see Strickler, 527 U.S. at 283 n. 23, 119 S.Ct. 1936, and because the prosecutor was *49 acting in his capacity as representative for the government, see Kyles, 514 U.S. at 437, 115 S.Ct. 1555, defense counsel was also reasonable in concluding that the prosecutor’s denials indicated that such evidence of a conviction did not exist.
3. Requirement to object to the nondisclosure of exculpatory evidence
Finally, the Commonwealth argues that McCambridge was required to object to the prosecutor’s inaccurate representation about Doyle’s record, despite Strickler’s holding that “defense counsel may reasonably rely” on a prosecutor’s representation that she has complied fully with Brady, Strickler, 527 U.S. at 283 n. 23, thus rendering unnecessary an objection to the nondisclosure of that evidence. In Strick-ler, the prosecutor maintained an “open file” policy, meaning that “his entire prosecution file was made available to the defense.” Id. at 283 n. 22, 119 S.Ct. 1936. While it is not clear from the record whether the Commonwealth maintained an open file policy in this case, the prosecutor’s statements to defense counsel and to the court that Doyle had no criminal record constitute essentially the same representation at issue in Strickler: that the prosecution had fulfilled its constitutional duty under Brady. Under such circumstances, defense counsel is not required to object. Indeed, the Supreme Court rejected such a requirement in Strickler:
“The presumption, well established by tradition and experience, that prosecutors have fully discharged their official duties, is inconsistent with the novel suggestion that conscientious defense counsel have a procedural obligation to assert constitutional error on the basis of mere suspicion that some prosecutorial misstep may have occurred.”
Strickler, 527 U.S. at 286-87, 119 S.Ct. 1936 (citation and internal quotation marks omitted).
The Commonwealth has argued, again, that the prosecutor’s occasional use of the words “as far as I know” excuses its failure to disclose the exculpatory evidence because such equivocal language should have indicated to the defense that a specific objection to the nondisclosure was necessary. This argument is unpersuasive for the same reasons it was unpersuasive in the context of McCambridge’s failure to pursue a more thorough investigation of Doyle’s criminal record: the Commonwealth cannot escape its Brady obligations by qualifying its nondisclosure of exculpatory evidence and then shifting its disclosure burden to defense counsel. Moreover, the potential mischief invited by the Commonwealth’s argument provides strong reason for rejecting it.
B. The State Court Decision
McCambridge argued to the Massachusetts Appeals Court that the prosecution did not fulfill its disclosure obligations under Brady. For example, he stated in his opening brief:
The suppression of material evidence favorable to the accused and requested by him violates the due process clause of the Fifth Amendment. Brady v. Maryland, 373 U.S. 83, 87 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963). In the case at bar, because the trial court refused to require the Commonwealth to produce Doyle’s criminal record, the defendant cannot prove that exculpatory evidence was withheld. The defendant did everything he could to preserve this issue. Compare this case with Commonwealth v. O’Brien, 419 Mass. 470, 477 [645 N.E.2d 1170] (1995). Thus, this Court should order the Commonwealth to produce Doyle’s criminal record so that an appellate decision can be made. In the *50 alternative, the case should be remanded to the Superior Court for production of the document at issue.
If Doyle had a criminal record as described by the defendant at trial, then the withholding of that information and the misleading of the defense was intentional and prejudicial. See Commonwealth v. Tucceri, 412 Mass. 401 [589 N.E.2d 1216] (1992).. A new trial would be required.
As this passage from McCambridge’s brief reveals, he articulated a claim under Brady, with appropriate citations, and argued that the prosecutor’s nondisclosure of Doyle’s record — if the record indeed existed — prejudiced him.
The prosecution finally disclosed Doyle’s criminal record after McCambridge filed his brief to the appeals court. Following the Commonwealth’s belated disclosure, McCambridge refined his Brady argument in his reply brief:
In United States v. Bagley, 473 U.S. 667 [105 S.Ct. 3375, 87 L.Ed.2d 481] (1985), the Supreme Court recognized that an incomplete response to a specific request for disclosure not only deprives the defense of the specific evidence, but also suggests to the defense that such evidence does not exist. The defense’s reliance on such a misleading representation can result in important changes in trial strategy. In the case at bar, the defendant was specifically misinformed about Doyle’s criminal record. The defendant then gave up his strategy of attempting to elicit information about that record from Doyle’s brother or the Clerk of the Norfolk Superior Court. The prosecutor fully exploited his misrepresentation in closing argument.
The state constitutional and/or common law standard for a Brady violation does consider the issue of bad faith. See, Commonwealth v. Tucceri, 412 Mass. 401 [589 N.E.2d 1216] (1992). Where bad faith has been demonstrated, and the withheld- evidence might have affected the outcome of the trial, the defendant is entitled to a new trial. In the absence of bad faith, a new trial is necessary if the withheld evidence would have been a real factor in the jury’s deliberation. In the case at bar, the defendant’s truthfulness about the circumstances of his confrontation with Doyle was the central issue in the case. The blocking of the Commonwealth’s claim, that the so-called argument about Doyle’s child abuse record was only the defendant’s attempt to assassinate Doyle’s reputation, would have been a real factor in the jury’s deliberation, and probably would have tipped the scales in favor of the defendant.
Again, McCambridge identified the proper legal authority for his Brady claim and explained why he was prejudiced by the prosecutor’s failure to fulfill his disclosure obligations.
McCambridge’s Brady claim was thus fully presented to the Massachusetts Appeals Court. In its opinion affirming McCambridge’s conviction and sentence, the appeals court addressed the issue of Doyle’s record only briefly: “While the defendant pressed for the introduction of the victim’s criminal record at trial, he did not object when the judge did not order its production or request that the record be marked for identification. He cannot now be heard to complain that the judge failed to do so at the sentencing stage.” McCambridge, 690 N.E.2d at 475. The court did not seem to recognize the Brady implications of Doyle’s criminal record— despite McCambridge’s argument on the issue in both his opening and reply briefs.
Under the new standard for federal ha-beas review, we must examine the state court determination of McCambridge’s *51 Brady claim to determine whether it is contrary to or an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d)(1). The Supreme Court has said the following with respect to the “contrary to” prong of § 2254(d)(1):
The text of § 2254(d)(1) therefore suggests that the state court’s decision must be substantially different from the relevant precedent of this Court.... A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.... A state-court decision will also be contrary to this Court’s clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.
Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The Massachusetts Appeals Court did not explicitly identify a legal rule in finding that McCambridge could not “now be heard to complain” about the nonproduction of Doyle’s record because he did not object when the trial court judge failed to order its production. McCambridge, 690 N.E.2d at 475. However, implicit in this reasoning is a legal rule that would require a criminal defendant to object to the prosecution’s nondisclosure of exculpatory evidence where the prosecution has represented that such evidence does not exist. Stnckler, however, held that defense counsel is not required to object to the nondisclosure of exculpatory evidence where the prosecutor has represented that she has discharged fully her Brady obligations. Strickler, 527 U.S. at 289, 119 S.Ct. 1936. Accordingly, the opinion of the Massachusetts Appeals Court denying McCam-bridge’s Brady claim, in part, because he failed to object at trial is contrary to clearly established federal law as determined by the Supreme Court.
C. Adequate and Independent State Ground
The Commonwealth further maintains that our review of McCambridge’s habeas petition is precluded because there is an adequate and independent state ground for the state appeals court decision. Federal courts “will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.” Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Noncompliance with a state procedural rule may preclude federal review: “The [adequate and independent state ground] doctrine applies to bar federal ha-beas when a state court declined to address a prisoner’s federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent and adequate state procedural grounds.” Id. at 729-30, 111 S.Ct. 2546. In this case, the Commonwealth contends that the appeals court’s reliance on the Massachusetts rule requiring contemporaneous objections provides such an adequate and independent state ground.
I have already indicated that I would reject the Commonwealth’s argument that McCambridge had an obligation to object to the government’s failure to disclose Brady material. As I have explained, there is no such obligation under federal law. Indeed, the Commonwealth has not identified any authority supporting its assertion that McCambridge was required to object. My own review of Massachusetts caselaw has unearthed no case — except for the decision of the appeals court in this case- — requiring an objection to the inaccu *52 rate representation by a prosecutor that exculpatory evidence sought by the defense has been disclosed. See, e.g., Commonwealth v. Hill, 432 Mass. 704, 739 N.E.2d 670 (2000); Commonwealth v. Tucceri, 412 Mass. 401, 589 N.E.2d 1216, 1224 (1992). For a state procedural rule to constitute an adequate and independent state ground barring federal habeas review, that rule must be consistently enforced in the state courts. See Moore v. Ponte, 186 F.3d 26, 32-33 (1st Cir.1999). Even if a Massachusetts procedural rule requiring an objection to the nondisclosure of exculpatory evidence had been consistently enforced, such a rule would be unconstitutional under Strickler. Accordingly, there is no adequate and independent state ground supporting the decision of the Massachusetts Appeals Court that precludes our review of McCambridge’s claim.
II. Prejudice
The conclusion that the ruling by the appeals court requiring an objection to the prosecutor’s nondisclosure is contrary to clearly established federal law does not end the Brady inquiry. Brady established both a rule of conduct — that prosecutors must disclose exculpatory evidence in the possession and control of the government — and a standard of prejudice that petitioners must meet in order to obtain relief for a prosecutor’s failure to comply with that rule. See Strickler, 527 U.S. at 281-82, 119 S.Ct. 1936 (noting elements of a Brady claim). Accordingly, it is also necessary to assess whether the appeals court erred in its determination of prejudice under Brady, and if so, whether that erroneous determination constituted an unreasonable application of clearly established federal law.
To prevail on his Brady claim, McCam-bridge must show that he was prejudiced by the prosecutor’s failure to disclose the evidence of Doyle’s criminal record. More specifically, he must demonstrate “a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.” United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). “A ‘reasonable probability’ is a probability sufficient to undermine confidence in the outcome.” Id. “The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.” Strickler, 527 U.S. at 289-90, 119 S.Ct. 1936. See also United States v. Josleyn, 206 F.3d 144, 152 (1st Cir.2000). That there was sufficient evidence on which to convict McCambridge does not establish that his trial was fair. See Kyles, 514 U.S. at 435,115 S.Ct. 1555.
It seems improbable that, standing by itself, McCambridge’s inability to corroborate his testimony through the introduction of Doyle’s conviction would have had an effect on the jury’s verdict. However, as McCambridge has argued consistently, the prosecutor’s summation, exploiting his misleading disclosure about Doyle’s conviction, seriously prejudiced his case.
Immediately after the third sidebar, the defense rested and the parties made their closing arguments,[7] the pertinent parts of which follow:
DEFENSE:
Now, I want to talk about one other thing that’s not evidence in this case. Mr. McCambridge told you on the stand *53 the reason that he and Mr. Doyle got into the fight, besides that they were both drinking and probably neither one thinking with great clarity, there had been an incident a couple of months previously where Mr. MeCambridge says he had been told something about Mr. Doyle and confronted him with it.
The Judge admitted that evidence as evidence of Mr. McCambridge’s state of mind; in other words, it’s not evidence that Mr. Doyle ever did anything. There is no evidence in this case that Mr. Doyle ever molested or abused any child.... There is also no evidence in this case that he did it. There is simply no evidence in this case one way or the other. You don’t know as you sit here whether what transpired, what Mr. MeCambridge says transpired between the two of them, has any backing in reality or not. There is no evidence. There is no evidence that he did it. There is no evidence that he didn’t do it. It was admitted for a different purpose, which was the state of mind.
Now, you have to decide whether or not something like that could cause that explosion in the ear, that eruption of bad blood when people had been drinking. Mr. MeCambridge told you that he made some comment to this person that enraged him, and he had been threatened before.
* * *
PROSECUTION:
Does the defendant have something for you to believe when he gets up there and says, oh, yeah, I had an argument with Richard Doyle because of child molestation? There is absolutely evidence of that.[8] Was that put in there to tell you what his frame of mind was? No. That was his third shot at the victim from the stand, assassinating his reputation with no evidence. That’s what that was for, I suggest to you, not to show state of mind.
In compliance with the ruling of the judge, the defense argued in its summation that whether or not Doyle had in fact been convicted of child abuse was not at issue in the case, the testimony about Doyle’s conviction having been admitted only to establish McCambridge’s state of mind. In marked contrast, the prosecutor ignored the court’s ruling, as well as his representation that he would abide by that ruling, and used the absence of the exculpatory evidence he had failed to produce to impugn McCambridge’s credibility. For reasons that are not clear from the record, defense counsel did not object to the prosecutor’s closing argument. Normally, such an omission by defense counsel would warrant requiring MeCambridge to show cause for his failure to object and prejudice from the prosecutor’s closing argument. However, I conclude that the Commonwealth failed to raise the issue of McCambridge’s procedural default below and has thus waived that argument.
A. Waiver of Waiver
Massachusetts has a “routinely enforced, consistently applied contemporaneous objection rule” regarding improper closing argument. Burks v. Dubois, 55 F.3d 712, 716 (1st Cir.1995). Absent a timely objection, Massachusetts courts will not review *54 appellate claims of improper summation unless cause and prejudice are demonstrated, except to ensure that a miscarriage of justice does not occur. See Commonwealth v. Stote, 433 Mass. 19, 739 N.E.2d 261, 268 (2000). When the Massachusetts courts apply the procedural default rule, federal review of an improper summation claim is similarly foreclosed because failure to observe state procedural rules can constitute an adequate and independent ground for the state court decision. Palmariello v. Superintendent of M.C.I. Norfolk, 873 F.2d 491, 493 (1st Cir.1989).
The Commonwealth did not argue in the federal district court that McCambridge procedurally defaulted by not objecting to the prosecutor’s closing argument.[9] Indeed, even after receiving three extensions of time to file a brief in the federal district court, the Commonwealth failed to file a timely brief.[10] “[Tjhis circuit religiously follows the rule that issues not presented to the district court cannot be raised on appeal.” Ouimette v. Moran, 942 F.2d 1, 12 (1st Cir.1991).
Moreover, litigants in federal habeas proceedings arising from state court convictions are generally required to raise all issues in the state courts. See Trest, 522 U.S. at 89, 118 S.Ct. 478; Coleman, 501 U.S. at 732, 111 S.Ct. 2546 (noting that the independent and adequate state ground doctrine “ensures that the States’ interest in correcting their own mistakes is respected”). In this case, the Commonwealth did not argue procedural default in any state proceedings. “[Procedural default is normally a defense that the State is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter.” Trest, 522 U.S. at 89, 118 S.Ct. 478 (internal quotation marks omitted); see also Commonwealth v. LaBriola, 430 Mass. 569, 722 N.E.2d 13, 14 n. 1 (2000). We should enforce that rule here.
B. State Court Decision
Next I examine the opinion of the Massachusetts Appeals Court to determine whether its conclusion that McCambridge was not prejudiced by the nondisclosure of the exculpatory evidence is contrary to or an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d)(1). On the prejudice issue, the appeals court said the following:
In any event, assuming without deciding that the prosecutor should have produced the victim’s record, there was no *55 prejudice to the defendant because he was aware of the victim’s record and was prepared to offer such evidence at trial. Moreover, by convicting the defendant of manslaughter, the jury obviously credited the defendant’s testimony that the struggle in the van was precipitated by the defendant’s remark about this offense to Doyle. See Commonwealth v. Tucceri, 412 Mass. 401, 412-414, 589 N.E.2d 1216 (1992).
I accept the majority’s conclusion that the Massachusetts Appeals Court applied a standard of prejudice that is consistent with Brady, and that its decision was thus not contrary to federal law. However, I would hold that the state court’s conclusion on prejudice is an unreasonable application of the Brady prejudice standard. To explain, I describe the evidence presented at McCambridge’s trial.
1. The evidence
The prosecution alleged at trial that McCambridge shot and killed Doyle shortly after the two men left a bar in Cambridge at 1 a.m., and that McCambridge was driving, with Doyle’s body in the back of the van, when a state trooper tried to stop the van. The prosecution further alleged that the van crashed when McCam-bridge reached for a gun with which he intended to shoot the police officer attempting to apprehend him. However, the evidence the Commonwealth presented at trial to prove this theory was conflicting and inconclusive.
a. Time of death
The doctor who performed the autopsy on Doyle testified that Doyle had last consumed alcohol approximately one and one-half hours before his death. It is undisputed that Doyle and McCambridge left the bar when it closed at 1 a.m. and that the accident occurred at about 2 a.m. Thus, if credited by the jury, the doctor’s uncon-tradicted opinion tended to diminish any possibility that Doyle’s death occurred much before the crash occurred, let alone just after the two men left the bar at 1 a.m. Another prosecution witness, an EMT who responded to the accident, testified that Doyle’s skin was still warm when his body was found pinned beneath the van, thus tending to establish that Doyle died not long before the accident, particularly in light of the uncontradicted testimony that it was cold that night.
b. The weapons
The evidence was also inconclusive with respect to McCambridge’s ownership of and possession of a gun. The prosecution tried and failed to establish that McCam-bridge was carrying a gun in the waistband of his pants before he was in the van. The bartender testified that McCambridge became angry when the bartender started to close up the bar. He said that McCam-bridge stood up and brushed up against him, chest to chest, while pushing his coat back. When asked by the prosecutor whether he saw McCambridge “reach for anything,” the bartender said no. The bartender also testified that McCambridge did not seem to be angry with Doyle when the two men left the bar.'
A firearms officer testified that McCam-bridge shot Doyle twice with a derringer. When emergency personnel were removing McCambridge’s jacket after the accident, the derringer fell to the floor of the ambulance. However, the firearms officer did not trace the derringer to establish who owned it. Nor did he attempt to identify the owner of the 9 mm. pistol with which Doyle allegedly had threatened McCambridge. Another Massachusetts police officer testified that a box of ammunition fitting one of the two guns was found in the van. However, the box of *56 ammunition, labeled “Big Al’s Gun Shop,” was never introduced into evidence and the police officer had no other information about it.
c. Location of the bodies
In an effort to bolster its theory that McCambridge had killed Doyle up to an hour before the accident, the prosecution attempted to establish that McCambridge was driving when the van crashed. Forensic witnesses testified that blood on the seat of McCambridge’s pants was consistent with Doyle’s blood, supporting an inference that McCambridge sat in the driver’s seat at some point. However, there was also evidence that there was not enough blood on his pants to suggest that he sat there for long.
There was other conflicting evidence about the probable location of McCam-bridge’s body and Doyle’s body at the time of the accident. A prosecution witness testified that: (1) the passenger-side window was broken; (2) glass from the passenger-side window was found on McCam-bridge’s. collar and under his jacket but none was found on Doyle; and (3) if someone had been sitting in the passenger seat at the time of impact, he would have been thrown to the right into the windshield or the passenger-door window. The prosecution offered no explanation as to how or why, under its theory of the case, McCam-bridge might have been in the passenger seat at the time of the impact.
The defense tried to show that it was not clear where the two bodies had been located prior to the crash and roll-over. The defense accident reconstructionist testified that the driver of the van could have been thrown between the bucket seats and out of the side door when the van was lifted into the air. The evidence was undisputed that after the accident the sliding door on the passenger side of the van was off its bottom hinges. The witnesses were in agreement that Doyle had been thrown from the car through this doorway. Because the fabric of Doyle’s sweater had actually fused to the van, one investigator testified that Doyle’s ejection must have been the result of a major impact that generated the heat necessary to accomplish the fusion. This evidence indicated that Doyle could have been driving at the time of the crash, and did not establish whether Doyle, if he had not been driving, was placed in the back of the van by McCambridge prior to the accident or was thrown there upon impact.
Police officers, emergency medical personnel and civilians agreed that McCam-bridge was found wedged in the driver’s seat area. Yet blood and hair sample tests established, without contradiction, that McCambridge’s head hit the passenger side of the windshield during the crash. Uncontradicted testimony also established that McCambridge had a gash in his head and was covered with blood when he was found.
d. The police investigation and handling of evidence
There were other questions left unanswered by the investigators. The accident reconstructionist for the state police had no photographs of the tire marks on the road and could not explain the absence of such important and apparently routine evidence.[11] He also admitted during cross-examination that he had made mistakes in drawing the accident scene; he was unsure what one line was intended to indicate and *57 a second line purporting to represent the track of one 'tire in fact traced the track of a different tire. Like the forensic chemist, he became confused regarding the physical principles governing the direction the bodies would have moved when the van hit the barrier.
Another state investigator failed to document where things were located before they were removed from the van by the police. She was unaware of any inventory that might have been made of the “heaps of stuff’ that had been in the van, which included trash bags, clothing, newspapers and debris. She also stated that the nine millimeter gun, which was loaded and cocked and allegedly used to threaten McCambridge, was found under a great deal of debris. Although the prosecution alleged that the van was weaving because McCambridge was reaching for this same gun in order to shoot the trooper who was trying to pull him over, there was no testimony as to whether the debris would have been on top of the gun before the crash or whether the gun itself would have moved during the crash. Moreover, the investigator could not say whether bloodstains of Doyle’s blood type found in the back of the van were recent or even whether they had been made by the police as they removed items from the van. Some of the items that had fallen onto the road during the crash had been thrown back into the van before it was towed away, thus risking contamination and making it harder yet to reconstruct the accident.
e. Self-Defense
In support of his self-defense claim, McCambridge testified that Doyle became aggressive after McCambridge called him a name referring to his conviction for child abuse. He also stated that he remembered nothing after the first shot he fired at Doyle until three to four days later when he was in the hospital. However, a medical expert, called by the defense, explained that a person might become more aggressive after receiving the type of wound Doyle received when hit by the first bullet. Dismissing McCambridge’s amnesia as “convenient,” the prosecutor called no medical experts to challenge the inference that such a memory loss could be attributed both to shock and to the serious head wound McCambridge sustained in the accident. Other than McCambridge’s own testimony, the record is devoid of evidence bearing on whether McCam-bridge was in reasonable fear of serious bodily injury or death when he shot Doyle.
2. The verdict
The jury began deliberating at approximately 1:30 p.m. and returned its verdict the afternoon of the following day.[12] At the end of the first day of its deliberations, the jury requested clarification on (1) unlawful killing, (2) malice aforethought, (3) burden of proof, and (4) reasonable doubt. The following day, the jury asked the trial judge to clarify the elements of the manslaughter charge. That afternoon, the jury returned a verdict finding McCam-bridge guilty of the crime of manslaughter, unlawful possession of a firearm, operating under the influence, and operating to endanger.
In returning a verdict of manslaughter, the jury rejected the prosecutor’s theory that McCambridge acted with either premeditation or malice aforethought. Its rejection of the murder charge left the jury with only two options on the charge of unlawful killing: manslaughter or aequit- *58 tal. The prosecutor’s insinuation that McCambridge fabricated his testimony about Doyle’s conviction to besmirch Doyle’s reputation was the last thing the jury heard from either counsel. This improper undermining of McCambridge’s credibility on the determinative question of self-defense, and perhaps of his credibility in general, may well have tipped the balance in favor of a manslaughter conviction. Thus, I conclude that there is a reasonable probability that the outcome of McCam-bridge’s trial would have been different if the existence of Doyle’s conviction had been disclosed and the prosecutor had not suggested in closing argument that McCambridge was fabricating Doyle’s conviction.
The majority disagrees with this prejudice analysis. To convict McCambridge of manslaughter, the majority reasons, “the jury must have found that [he] was provoked in some way, resulting in a sudden heat of passion.” The majority observes that “[t]he only evidence presented at trial regarding any possible provocation for the altercation was McCambridge’s testimony that Doyle threatened him with the nine millimeter Smith & Wesson after McCam-bridge had called him a child abuser and that a conflict ensued.” Thus, for the majority, “the jury necessarily found that McCambridge, in his self defense, used at least excessive force against Doyle (or ... turned into the attacker).” The majority concludes that “the jury accepted McCam-bridge’s story about Doyle’s anger at being called a child abuser. Nothing could be added to this by having the fact of the child neglect conviction established or admitted into evidence.”
In my view, this reasoning is unduly speculative. It assumes that if the jury convicted McCambridge of manslaughter, it must have believed his account of how the altercation with Doyle began. However, as the amicus explains:
The jury could have disbelieved petitioner almost entirely, thus rejecting his self-defense testimony, and still found him guilty of manslaughter rather than murder. There was evidence outside petitioner’s testimony that a struggle was occurring inside the van while driving on the highway shortly before the accident. Drivers saw the van rocking back and forth on the highway, and forensic evidence indicated that Doyle was shot shortly before the crash. There was independent evidence supporting petitioner’s testimony that Doyle had pointed a cocked gun at him. There was also evidence that both petitioner and Doyle had been drinking. The court instructed the jury that it could find manslaughter if it found that petitioner had killed Doyle “upon sudden combat.” The court also instructed that what “distinguished murder from manslaughter was the absence of malice aforethought.” The jury could simply have concluded that the government failed to prove its case on the critical issue of intent given the paucity of the evidence supporting its theory of how and when petitioner killed Doyle.
In other words, the jury could have found that the circumstantial evidence supported the conclusion that McCambridge killed Doyle upon sudden combat or in the heat of passion — for whatever reason — but that it was not sufficient to establish malice aforethought.[13] There is simply no basis *59 for concluding that the jury must have believed McCambridge’s account of what sparked the incident.
Nor is the majority opinion convincing when it declares that “[njeither the fact of Doyle’s conviction, nor the contested excerpt from the prosecutor’s closing argument, is material to whether McCambridge used excessive force.” This argument assumes that the jury found that McCam-bridge acted in self-defense but with excessive force. Yet, again, the jury could have disbelieved his self-defense claim, but convicted him of manslaughter because the circumstantial evidence supported a finding of “sudden combat” (but failed to establish malice aforethought). If the jury had believed McCambridge’s story about the origins of the altercation, it could have found that he acted in self-defense without excessive force, and thereby was entitled to an acquittal. It is simply wrong to say that the jury must have found that McCambridge used excessive force in self defense, when we do not know if the jury accepted his claim that he acted in self-defense in the first place.
The majority is also inconsistent in its assessment of the effect on McCam-bridge’s credibility of the prosecutor’s references in closing argument to McCam-bridge’s unsupported claim about Doyle’s conviction for child abuse. On the one hand, the majority asserts that “[a]t most the prosecutor’s statement was another stab at the already damaged credibility of the defendant,” suggesting that McCam-bridge, generally speaking, was not a credible witness. Yet the majority also asserts that the jury must have believed McCam-bridge’s testimony that he fired on Doyle in self-defense, in support of its theory that he was convicted of manslaughter because the jury decided he used excessive force in his self-defense. This seems to be a rather selective view of McCambridge’s credibility.
My own view is that- McCambridge’s credibility was impugned in the eyes of the jury on the critical issue of self-defense, and there is at least a reasonable probability, the Brady prejudice standard, that this damage was attributable to the prosecutor’s unfair closing argument. That view draws support from the jury’s conviction of McCambridge on two of the three motor vehicle offenses. These convictions indicate unmistakably that they concluded that McCambridge was driving the van at some point, a determination that required rejecting substantial parts of his account of the altercation with Doyle, the shooting, and the accident. The majority suggests that “[t]he Appeals Court could reasonably conclude ... that once McCambridge shot Doyle, he pushed Doyle toward the back of the van and attempted to drive from the passenger’s seat or the driver’s seat.” It is indeed possible that the jury reasoned as the majority describes, but a more straightforward explanation is that the jury simply disbelieved McCambridge’s testimony that Doyle was driving the van when he was shot.
My conclusion that McCambridge was prejudiced by the prosecutor’s misconduct is consistent with our decision in United States v. Udechukwu, 11 F.3d 1101 (1st Cir.1993), where we considered the prejudicial effect of a prosecutor’s closing argument questioning the existence of exculpatory evidence the defendant claimed existed but which the prosecution failed to disclose. The defendant in that case, charged with smuggling illegal drugs into the United States from Aruba, presented a defense of duress. She testified that a man named Michael Mouma had threatened to harm her children if she did not *60 transport drugs for him. Defense counsel attempted to obtain evidence from the prosecution to corroborate the defendant’s testimony regarding Mouma and the circumstances under which she had agreed to smuggle the drugs. Although the government had information that Mouma did exist, was in Aruba, and had been a drug trafficker, that exculpatory information was never disclosed to the defense. The prosecutor then used the absence of information about Mouma to challenge Ude-chukwu’s credibility in closing argument. In Udechukwu, as here, the defendant asserted on direct appeal[14] that the prosecution’s Brady violation was magnified by the improper summation. We stated:
The inferences and the direct challenge to the existence of a source named Michael, however, when the prosecution had unearthed evidence that he existed and was a prominent dealer in narcotics, is indefensible. Here we find a kind of double-acting prosecutorial error: a failure to communicate salient information, which, under [Brady and Giglio ] should be disclosed to the defense, and a deliberate insinuation that the truth is to the contrary.
Id. at 1106.
As in the instant case, there was no question in Udechukwu that the defendant committed the acts alleged by the prosecution. Udechukwu’s defense of duress, like McCambridge’s claim of self-defense, depended entirely on her credibility. In Udechukwu, the evidence not disclosed by the prosecution only partly substantiated her defense because the fact that Mouma existed, lived in Aruba, and had been involved in illegal narcotics did not establish that Mouma ever threatened Udechukwu or asked her to smuggle drugs. Nevertheless, we reversed Udechukwu’s conviction and remanded for a new trial because we concluded that she was prejudiced by the prosecutor’s improper attack on the crucial issue of her credibility: “Whether the government’s failure to disclose this credibility-strengthening information could be said to be reversible error, we need not decide. We have no doubt, however, that the prosecutor’s persistent theme in closing argument suggesting the nonexistence of this information ... did fatally taint the trial.” Id. at 1105.[15] Thus, I conclude that the prosecutor’s insinuation during closing argument that McCambridge had lied about Doyle’s criminal record likewise tainted the McCambridge trial in the relevant Brady sense.[16] It deprived McCambridge of “a trial resulting in a verdict worthy of *61 confidence.”[17] Strickler, 527 U.S. at 289-90, 119 S.Ct. 1936.
Nevertheless, my conclusion that McCambridge was prejudiced by the prosecution’s failure to disclose Doyle’s conviction would not be sufficient to warrant the issuance of a writ of habeas corpus. I must also conclude that the determination of the appeals court bn this issue constituted an unreasonable application of clearly established federal law as articulated by the Supreme Court.[18] See 28 U.S.C. § 2254(d)(1). The appeals court found no prejudice for two reasons. First, it observed that “there was no prejudice to [McCambridge] because he was aware of the victim’s record and was prepared to offer such evidence at trial.” McCambridge, 690 N.E.2d at 475. That observation is entirely beside the point. McCam-bridge did not wish to offer proof of the victim’s record because he agreed with the trial court that the truth about that record was irrelevant. McCambridge had referred to Doyle’s record in his testimony and his closing argument only to explain the origin of the altercation. The truth of the record only became an issue at the end of the trial because of the prosecutor’s unfair attack on McCambridge’s credibility in closing argument.
Second, the appeals court said that the jury must have believed McCambridge’s account of the struggle and its cause given his conviction for manslaughter: “By convicting the defendant of manslaughter, the jury obviously credited the defendant’s testimony that the struggle in the van was precipitated by the defendant’s remark about [the conviction] to Doyle.” McCambridge, 690 N.E.2d at 475. As I have explained in my analysis of the majority’s similar assessment of the prejudice issue, the court’s conclusion that the jury “obviously credited” McCambridge’s testimony rests on a faulty, unduly speculative premise.[19] The jury may well , have reached a manslaughter verdict for any number of reasons having nothing to do with its crediting of McCambridge’s insistence that the struggle was precipitated by his remark about Doyle’s conviction. All that can be said with certainty about the jury’s evaluation of McCambridge’s claim of self-defense is that the jury did not credit his testimony sufficiently to acquit him. Rather, their verdict strongly suggested a negative judgment about McCambridge’s credibility, in a case where the Commonwealth’s evidence was circumstantial and, on important points, inconclusive.
In summary, the state appeals court’s conclusion that the outcome of McCam- *62 bridge’s trial would not have been different if the evidence of Doyle’s conviction had been disclosed rests on an irrelevant observation and an unduly speculative premise. Under these circumstances, I must conclude that the court’s no prejudice determination constitutes an unreasonable application of clearly established federal law regarding prejudice in the Brady context, and the writ of habeas corpus should be granted.

. The Commonwealth does not dispute that the evidence of Doyle's conviction was favorable to McCambridge.

. Doyle’s official record indicates that he was convicted of child neglect and was sentenced to two years, six months to be served and the remainder suspended, with the six month period of incarceration to be followed by a two year period of probation. McCambridge referred at trial to a conviction for child abuse. The Commonwealth does not argue that the abuse/neglect distinction has any bearing on its disclosure obligation.

. This jury instruction was never given.

.CORI reports are kept by the Criminal History Systems Board of Massachusetts. The Board is responsible for collecting and organizing criminal offender record information. See Mass. Gen. Laws ch. 6, § 168 (2000). The Board is comprised of several law enforcement officials and associations. Private users of the system, victims of crime, and experts in personal privacy issues are also represented. The Board serves as a centralized repository for criminal record information and may disseminate information only to criminal justice agencies, agencies required to have access by statute, and other agencies or individuals "where it has been determined [by the Board] that the public interest in disseminating such information to these parties clearly outweighs the interests in security and privacy." Id. at § 172.

. The Commonwealth has not contended (nor did the trial court suggest) that the defense had access to Doyle's CORI report in the absence of a court order or cooperation by the prosecution. Massachusetts law permits dissemination of these records only to agencies and individuals that the Board has certified. See Mass. Gen. Laws ch. 6, § 172.

. In its brief to the en banc court the Commonwealth focuses on the second and third arguments.

. Massachusetts Rule of Criminal Procedure 24(a)(1) provides that “the defendant shall present his closing argument first.”

. I have reproduced the prosecutor’s argument as it appears in the transcript of the trial as set forth in the record. Given the thrust of the prosecutor’s argument, I assume that either the court reporter or the prosecutor unintentionally omitted the word "no” before the word "evidence” in this sentence. Although the majority suggests that the transcript should be read as written, the Commonwealth conceded in its brief to the panel that the prosecutor either said or intended to say "absolutely no evidence.”

. In its brief to the panel, the Commonwealth, for the first time, did note in passing that there was no objection to its summation', but it did not mention the possibility of a procedural bar to federal habeas review. The summation issue was disposed of in one paragraph. "There is also no merit to the petitioner's contention that he was prejudiced by the prosecutor's reference during closing argument to the fact that the victim's criminal record was not in evidence. Defense counsel, during his closing, had already expressly conceded this point by stating: 'There's no evidence in this case that Mr. Doyle ever molested or abused any child.' In any event, the petitioner did not object to the prosecutor’s closing and the judge instructed the jury that counsel's arguments were not evidence.” This statement is patently insufficient to raise an adequate and independent state ground argument with respect to the failure of the defendant to object to the Commonwealth's closing argument. See United States v. Fernandez, 145 F.3d 59, 63 (1st Cir.1998) (issues mentioned in perfunctory manner, unaccompanied by argument, are deemed waived); Fed. R.App. P. 28(b). Nor can the Commonwealth raise the issue for the first time before the en banc court. See Kale v. Combined Ins. Co., 924 F.2d 1161, 1169 (1st Cir.1991) (stating that a party cannot raise an issue for the first time on rehearing en banc).

. Despite not receiving permission to file a brief after the expiration of the final deadline, the Commonwealth did so. We assume it was not considered by the district court.

. The defense expert testified that it was difficult to analyze the accident without a picture of the road marks and that it was standard procedure to carefully record such marks.

. It is unclear from the record at what time the jury was dismissed for the evening on the first day, at what time it reconvened on the second day, or at what time it rendered its verdict on the afternoon of the second day.

. As the majority points out, the jury was instructed as follows:
Manslaughter is an unlawful, intentional killing resulting from a sudden transport of the passions or heat of blood when there is no time to deliberate and when such passion or heat of blood is produced by ade *59 quate or reasonable provocation and without malice or upon sudden combat....

. We considered Udechulcwu's Brady claim on direct appeal, rather than collateral review. For purposes of evaluating McCam-bridge’s Brady claim, Udechukwu applies; the only difference in our standard of review for the two cases is that we must take the additional step here of determining that the appeals court decision affirming McCambridge’s conviction is contrary to or an unreasonable application of clearly established federal law.

. Massachusetts law is consistent with our own in this regard. In Commonwealth v. Collins, 386 Mass. 1, 434 N.E.2d 964, 969 (1982), the Supreme Judicial Court stated: “When the failure to disclose is coupled with the blatant misrepresentation made by the prosecutor in his closing argument to the juiy, the conclusion that the conviction cannot stand is inescapable.”

.I find wholly unpersuasive the suggestion of the majority that McCambridge somehow benefitted from the unavailability of Doyle's complete criminal record, which would have revealed the conviction for child neglect. The harm to McCambridge caused by the prosecutor’s failure to abide by his representation to the judge and to defense counsel that he would not question the fact of Doyle's conviction vastly outweighs any advantage McCam-bridge gained by not having the jury learn that Doyle's conviction was for child neglect rather than child abuse.

. In distinguishing TJdechukwu, the majority says that here the prosecutor did not make knowing misrepresentations to the jury. That may or may not be true. Indisputably, however, the prosecutor made a knowing misrepresentation to the judge and to defense counsel prior to closing argument that he would not argue to the jury the absence of evidence that Doyle had been convicted of child abuse. This conduct cannot be excused as "sloppiness. ”

. I agree with the majority's reformulation of the content of the "unreasonable application” clause of 28 U.S.C. § 2254(d)(1) in light of Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

.The district court agreed with the Massachusetts Appeals Court that McCambridge had not been prejudiced by the prosecutor's nondisclosure. It concluded that the jury must have found enough plausibility in McCambridge’s account to reject a first or second degree murder conviction: "[T]he jury must have accepted that [McCambridge’s] provocation story at least raised some reasonable doubt in order to convict on manslaughter rather than first- or second-degree murder.” This conclusion is unduly restrictive in its view that McCambridge received his due because he avoided a murder conviction. McCambridge was also entitled to fair consideration of his claim that he was not guilty of manslaughter.