COMMONWEALTH *vs.* DAVID W. TUCCERI.

Middlesex. December 4, 1991. - April 9, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Practice, Criminal*, New trial, Disclosure of evidence, Suppression of evidence by prosecutor. *Due Process of Law*, Disclosure of evidence. *Evidence*, Photograph, Relevancy and materiality.

Discussion of the prosecution's constitutionally based obligation to disclose to a criminal defendant evidence in its possession that could materially aid the defense against pending charges, and the necessity, in this respect, that a prosecutor depart from a totally adversary role. [404-408]

Discussion of the relationship between constitutional and common law principles in deciding a new trial motion based on the prosecutor's failure to turn over exculpatory evidence to a criminal defendant. [408-409]

Where a motion for a new trial of a criminal case was allowed on the basis of the prosecutor's failure to disclose exculpatory evidence to the defendant, a duty existing notwithstanding the omissions of defense counsel, there was no occasion to consider whether the failure of the defendant's trial attorney to have moved specifically for the production of the evidence provided the defendant with an independent claim that he was denied the effective assistance of counsel. [409]

In assessing the consequences of a prosecutor's failure to disclose exculpatory evidence to a criminal defendant, a judge's task is to decide what effect the omission might have had on the jury's deliberations. [410-411]

In ruling on a criminal defendant's motion for a new trial based on the failure of the prosecution to disclose exculpatory evidence, where the defendant has made no pretrial request or only a general request for exculpatory evidence, the common law test to be applied by a judge who was not the trial judge is whether there is a substantial risk that the jurors would have reached a different conclusion if the evidence had been admitted at trial, that is, whether, if the undisclosed evidence had been before the jury, it would have been a real factor in their deliberations. [412-414]

A defendant convicted of rape, kidnapping, and other serious crimes, after a trial in which identification of the assailant had been the sole contested issue, was entitled to a new trial by reason of the prosecution's

failure to produce, in response to the defendant's general motion for disclosure of exculpatory evidence, a police photograph of him, taken shortly after his arrest, that incontestably showed the defendant to have a moustache, where, since the victim and other witnesses had all testified that the assailant was clean-shaven; the photograph would have been a real factor in the jury's deliberations and its introduction in evidence might have accomplished something material for the defense. [414-415]

INDICTMENTS found and returned in the Superior Court on June 22, 1978.

A motion for a new trial, filed on May 11, 1989, was heard by *Hiller B. Zobel*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Patricia M. Darrigo*, Assistant District Attorney (*Rosemary D. Mellor*, Assistant District Attorney, with her) for the Commonwealth.

*Greta A. Janusz* for the defendant.

WILKINS, J. We granted further appellate review in this case to consider the standard to be applied in ruling on a defendant's motion for a new trial based on the failure of the prosecution to disclose exculpatory evidence in its possession.

At the defendant's 1978 trial on charges of rape, kidnapping, unarmed robbery, mayhem, and assault and battery, identification of the assailant was the only contested issue. The police arrested the defendant near the crime scene in Cambridge within minutes after the attacker had left the victim. The Cambridge police took photographs of the defendant shortly after his arrest. The victim testified repeatedly that her attacker was clean-shaven. Another witness who identified the defendant as the person he had seen near the crime scene testified several times that the man he had seen had no moustache. Police witnesses testified that the defendant did not have a moustache on the day of the crimes. The defendant's wife testified, however, that at the time of the crimes the defendant did have a moustache.

The defendant moved generally for the disclosure of exculpatory evidence. Although he and his counsel knew that photographs had been taken shortly after his arrest, the defendant never specifically requested their production. Certainly, the defense was not hindered by an inability to be specific in any request it might make for the photographs. In October, 1988, approximately ten years after his trial, the defendant wrote the record department of the Cambridge police department for a copy of the photographs taken of him on the night of his arrest. In circumstances not disclosed on the record, the defendant obtained them. The frontal photograph of the defendant's face shows the defendant with a moustache. The photograph would have aided the defendant in the impeachment of the principal witnesses against him. The Commonwealth grants that the photographs were exculpatory (*Commonwealth* v. *Ellison*, 376 Mass. 1, 21-22 [1978]), but argues, that, in light of the evidence tending to show that the defendant was guilty, a new trial is not required.[1]

Citing the rule stated in *Commonwealth* v. *Gallarelli*, 399 Mass. 17, 21 (1987), and cases cited, both the motion judge (who was not the trial judge) and the Appeals Court (*Commonwealth* v. *Tucceri*, 30 Mass. App. Ct. 954, 955, 956 [1991]) ruled that the prosecution's failure to disclose the exculpatory evidence required a new trial, even though the defendant did not specifically move for its production. We agree and conclude that it is time for this court to expand on the appropriate considerations in cases in which the prosecution had evidence that would have assisted the defendant but did not disclose it. One reason for presenting a more extensive explication of these considerations is that our views have

---

[1]The defendant generally fit the victim's description of her attacker, particularly as to the clothes and belt that her attacker was wearing. The heel from a boot of the defendant was found near the crime scene. Shortly after the incident, a man generally fitting the defendant's description, and identified by one witness as the defendant, was seen running toward a van owned by the defendant.

Although the motion judge correctly described the moustache as "trimmed, full, [and] plainly obvious," it was not prominent.

not developed in parallel with those of the Supreme Court of the United States in cases involving prosecutorial failures to disclose exculpatory evidence.

We shall discuss (1) the reasons why the prosecution must depart from a totally adversary role in cases of this sort, (2) the interrelationship of common law and constitutional principles in the decision of such cases, (3) the role of defense counsel and the relationship of any omissions of defense counsel to the prosecution's nondisclosures, (4) the significance, in deciding whether any error was reversible error, of the fact that the case was tried to a jury, and (5) the standard to be applied in deciding whether, in particular circumstances, a new trial may or should be ordered because admittedly exculpatory evidence was not provided to the defendant (and thus was not disclosed to the jury). Of all these concerns, the last is the most problematic because, on such a fact-based issue, a universal guide as to when prosecutorial error requires a new trial cannot be fashioned except in general terms and because the outcome of a nondisclosure case may depend on seemingly minor word differences in expressing the standard for measuring prejudice to a defendant's case.[2]

1. *The governing principles.* Due process of law requires that the government disclose to a criminal defendant

___

[2]For example, the rule previously stated to be applied to the facts of this kind of case is whether the undisclosed evidence *creates* a reasonable doubt that did not otherwise exist. *Commonwealth* v. *Gallarelli*, 399 Mass. 17, 21 (1987), quoting *United States* v. *Agurs*, 427 U.S. 97, 110 (1976). The motion judge expressed the guiding rule as whether the undisclosed evidence *could* create a reasonable doubt that would not otherwise exist. A standard that the Appeals Court stated at one point in its opinion was whether it could say that, if the exculpatory evidence had been introduced, "it would *not* have created a reasonable doubt as to the guilt of the defendant" (emphasis supplied). *Commonwealth* v. *Tucceri*, 30 Mass. App. Ct. 954, 955 (1991). The Appeals Court formulation may suggest that the Commonwealth has the burden of showing that the defendant was not prejudiced by the nondisclosure. It is, however, the defendant who has the burden of showing prejudice warranting or requiring a new trial order. See *Commonwealth* v. *Monteiro*, 396 Mass. 123, 130 (1985); *Commonwealth* v. *Wilson*, 381 Mass. 90, 110 (1980).

favorable evidence in its possession that could materially aid
the defense against the pending charges. The Supreme Court
of the United States announced the prosecution's constitu-
tional obligation to disclose material, exculpatory evidence in
*Brady* v. *Maryland*, 373 U.S. 83, 87 (1963), where the de-
fendant had requested specific evidence. In *United States* v.
*Agurs*, 427 U.S. 97 (1976), the Court provided protections
for defendants who only generally requested exculpatory evi-
dence or made no request at all. The *Agurs* opinion distin-
guished between a specific request and a general request for
exculpatory evidence in determining whether the prosecu-
tion's omission warranted a new trial. When the unsatisfied
request was specific, a new trial would be required if the un-
disclosed evidence "might have affected the outcome of the
trial." *Id.* at 104. If there was no request or if, as here, only
a general request was made, a new trial would be required
only if the undisclosed evidence "create[d] a reasonable
doubt which did not otherwise exist." *Id.* at 112. In *Com-
monwealth* v. *Ellison*, 376 Mass. 1, 23-24 (1978), Justice
Kaplan discussed some of the uncertainties the *Agurs* opin-
ion created.[3]

In *United States* v. *Bagley*, 473 U.S. 667 (1985), the Su-
preme Court adopted a single standard of prejudice (what it
calls materiality) for all prosecutorial nondisclosure cases.
See *id.* at 682; *id.* at 685 (White, J., concurring in part in
the judgment). That unitary standard, taken from *Strickland*
v. *Washington*, 466 U.S. 668, 694 (1984), which in turn re-
lied on the no request or no-specific request test of the *Agurs*
case, states that "[t]he evidence is material [i.e. requires a
new trial] only if there is a reasonable probability that, had
the evidence been disclosed to the defense, the result of the
proceeding would have been different. A 'reasonable
probability' is a probability sufficient to undermine confi-

---

[3]A third aspect involves situations in which the prosecution knew or
should have known that perjurious testimony was offered and did not dis-
close that fact. There, a new trial is required "if there is any reasonable
likelihood that the false testimony could have affected the judgment of the
jury." *United States* v. *Agurs, supra* at 103.

dence in the outcome." *United States* v. *Bagley, supra* at 682.[4] In *Commonwealth* v. *Gallarelli*, 399 Mass. 17 (1987), this court declined to adopt the *Bagley* "one size fits all" test as a matter of State law and adhered to the *Agurs* test for determining the consequences of a prosecution's failure to comply with a specific request for exculpatory evidence. *Id.* at 21 n.5. See *Commonwealth* v. *Daye*, 411 Mass. 719, 728-729 (1992).

There are several forces at work in prosecutorial nondisclosure cases. First, when the question arises posttrial, there is a public interest in the finality of judgments. New trials should not be granted except for substantial reasons. Second, prosecutors, who are agents of the State and often have access to information that defendants may not have, should be encouraged to disclose exculpatory evidence that in fairness defendants should have for their defense. Of course, a prosecutor cannot always know that a particular piece of evidence is or might be exculpatory.[5] A rule that encourages prosecutors

---

[4]In *Davis* v. *Alaska*, 415 U.S. 308, 318 (1974), the Supreme Court said proof of prejudice was unnecessary when the scope of cross-examination was unconstitutionally restricted. In *United States* v. *Bagley*, 473 U.S. 667, 676-678 (1985) the plurality opinion sought to distinguish *Davis* v. *Alaska*, a right to confrontation of witnesses case, from the due process basis of *United States* v. *Bagley*. The argument before us is not based on a denial of the defendant's constitutional right of confrontation. If no prejudice need be shown to obtain a new trial because of a direct restriction on the scope of cross-examination, should it be required for a substantial restriction on the depth and quality of cross-examination that results indirectly from prosecutorial nondisclosure of exculpatory evidence?

[5]In this case, the prosecutor (who is not appellate counsel) must have been, and certainly should have been, aware before trial that the photographs existed.

During a pretrial suppression hearing held on October 10, 1978, the victim testified that her attacker did not have a moustache, had no growth on his face, and was clean-shaven. A police officer testified that he did not recall any moustache, and the man who identified the defendant as the man he had seen near the crime scene and the defendant's van testified that the man had no moustache. The defendant had a moustache at the time of the hearing. The trial commenced on October 12. On October 16, a police officer testified on cross-examination by the defendant that the defendant did not have a moustache at the time of the crimes, that he had seen a "mug shot" of the defendant taken perhaps the day after the

to make pretrial disclosures of obviously or even arguably exculpatory material would not only promote fair trials[6] but would also help to avoid the difficulties of posttrial judicial review. Judges, therefore, should be sensitive to the allowance of motions for the disclosure of specific information claimed to be exculpatory. A prosecutor's duty, however, extends only to exculpatory evidence in the prosecutor's possession or in the possession of the police who participated in the investigation and presentation of the case. See *Commonwealth* v. *Daye*, 411 Mass. 719, 734 (1992). Third, when the omission of the prosecution is knowing and intentional or follows a specific request, a standard of prejudice more favorable to the defendant is justified in order to motivate prosecutors to be alert to defendants' rights to disclosure. It is this reason that underlies this court's rejection of the *Bagley* rule and our adoption of the specific request standard of the *Agurs* opinion as State law. See *Commonwealth* v. *Gallarelli*, *supra* at 21 n.5. In such cases, we overlay a prophylactic rule upon common law and due process fairness standards that lessens the burden in proving prejudice.[7] We

crimes, and that "[o]ne of the night men that work on the third platoon have [*sic*] it." On October 17, the defendant's wife testified that the defendant had a moustache on the day of the crimes.

[6]The prosecution's nondisclosure of the photographs obviously made it easier for the Commonwealth to meet its burden of proof.

[7]The rule that the Supreme Court stated in the *Bagley* case on its face makes the prosecution's state of mind irrelevant in deciding whether due process of law requires a new trial for any defendant from whom the prosecution improperly has withheld exculpatory evidence. This change is interesting in light of that Court's conclusion three years later in *Arizona* v. *Youngblood*, 488 U.S. 51, 57-58 (1988), that only on a showing of police bad faith can there be a denial of due process of law in the failure of the prosecution to preserve potentially exculpatory evidence. This court has declined to follow the *Youngblood* rule and has not required proof of bad faith in addition to prejudice to the defendant, caused by the prosecution's loss or destruction of evidence, as a necessary factor in deciding that a new trial is required in such circumstances. *Commonwealth* v. *Phoenix*, 409 Mass. 408, 412 & n.1 (1991). In *Commonwealth* v. *Henderson*, 411 Mass. 309, 310-311 (1991), where there was no police bad faith, we nevertheless upheld the pretrial dismissal of charges on State due process of law grounds where the police had lost a written record of the victim's description of the person who had robbed her in 1987 and where there were spe-

acknowledge that these disclosure requirements are inconsistent with the traditional adversary role of litigants. But the duties of a prosecutor to administer justice fairly, and particularly concerning requested or obviously exculpatory evidence, go beyond winning convictions. See *Commonwealth* v. *Wilson*, 381 Mass. 90, 109 (1980). See also S.J.C. Rule 3:08, PF 7, 382 Mass. 800 (1981) (standards relating to the prosecution function, disclosure of evidence by prosecutor).

2. *Common law and constitutional principles.* In deciding whether a defendant is entitled to a new trial because the prosecution failed to turn over exculpatory evidence, State judges are not limited to constitutionally based principles. The opinions of the Supreme Court of the United States that we have cited previously in this opinion are concerned with defendants' Federal constitutional rights. Our opinions in this area have generally applied the Federal constitutional standards without stating explicitly whether the same standards apply under the State Constitution. Cf. *Commonwealth* v. *Daye*, 411 Mass. 719, 725, 729 (1992) (State due process rights considered). In *Commonwealth* v. *Gallarelli, supra* at 21 n.5, however, as we have said, we declined to follow the Supreme Court's position in *United States* v. *Bagley*, 473 U.S. 667 (1985). We elected instead, without stating whether our rule had a common law or State constitutional basis, to continue with the principles of our decisions that had applied the rule of the *Brady* and *Agurs* cases. *Gallarelli, supra.* See *Commonwealth* v. *Ellison*, 376 Mass. 1, 21 (1978).

There is no reason why the nondisclosure issue could not be advanced by a motion for a new trial to which the regular principles of Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979), apply. Often such a motion will simply present a new trial claim based on newly discovered evidence. See *Commonwealth* v. *Grace*, 397 Mass. 303, 305 (1986) (defendant who seeks new trial on grounds of newly discovered evidence

---

cial circumstances involved in the victim's identification of the defendant more than two years later.

must show that evidence was newly discovered and that "it casts real doubt on the justice of the conviction").[8] Even if undisclosed evidence is not "newly" discovered, the failure of a prosecutor to furnish exculpatory evidence in his possession could be a proper basis for a new trial motion based on other common law grounds. Such a motion could also be based on constitutional grounds.

In dealing with common law decisions of a motion judge who was the trial judge, we have deferred in large measure to the judge's views on motions for a new trial. *Id.* at 307. There is, therefore, a discretionary range in cases like this within which the trial judge may properly award a new trial, even if a new trial is not constitutionally required and even if we would not have granted a new trial on our own assessment of the record. We have not extended similar deference to the views of a judge who, as was the case here, acted on a new trial motion but was not the trial judge. We have, however, deferred to such a motion judge's conclusions on testimony presented in association with a new trial motion. See *Commonwealth* v. *Grace, supra.* If the new trial claim is constitutionally based, this court will exercise its own judgment on the ultimate factual as well as legal conclusions.

In this case, we are in as good a position as the motion judge to assess the trial record. *Id.* The defendant argues only a violation of constitutional rights and does not assert any State common law right. We shall return to the question of common law relief in this case when we discuss the standard for measuring prejudicial error because we should not feel bound by a party's election to assert only constitutional rights and thereby decline to raise plausible nonconstitutional grounds for relief.

---

[8]To be sure, in the case now before us, a claim that at the time of trial the defense did not know of the photographs (and hence now could pass the test of newness) seems impossible to sustain (and has not been made). See *Commonwealth* v. *Grace,* 397 Mass. 303, 306 (1986) (to be "newly" discovered, evidence must have been unknown to defendant and his counsel and not reasonably discoverable).

3. *The role of defense counsel.* In many instances of prosecutorial nondisclosure of exculpatory evidence, defense counsel may have failed in his obligation to provide adequate representation. As a general rule, the omissions of defense counsel (a) do not relieve the prosecution of its obligation to disclose exculpatory evidence and (b) may provide the defendant with an independent claim of an unconstitutional denial of the effective assistance of counsel.

In this case, the defendant, represented by new counsel, argued below and argues to us that his trial counsel negligently failed to move specifically for the production of the photographs and that that omission requires that he have a new trial. It is true that, for some unclear reason, the defendant moved only generally for the production of exculpatory evidence and not specifically for the production of the photographs. The motion judge did not order a new trial, however, on the ground of ineffective assistance of counsel. He had no need to, and did not, make findings or rulings concerning either the quality of defense counsel's performance or the possible impact on the verdict of any failure of defense counsel to meet the constitutionally minimum level of competence. Defense counsel did argue to the jury that the prosecution's failure to produce the photographs warranted an inference that they show that the defendant did have a moustache on the night of the crimes. That argument pales, however, in its likely impact on a jury when compared with the frontal photograph's candid, objective, and hence irrefutable demonstration on the same subject. We shall not, and need not, pursue the ineffective assistance of counsel argument to its conclusion. Perhaps an adequate explanation why counsel did not move specifically for the production of the photographs lies outside the record.[9]

---

[9]If counsel's performance did fall measurably below accepted standards, the detrimental effect of that omission would be more easily established in this case than in the usual case of a claimed ineffectiveness of counsel. In this case, the harm caused by any negligence of defense counsel would be measured by the difference between the standard of review that would have been applied to the withheld evidence, if defense counsel had made a

4. *The role of the jury.* In dealing with a claimed failure of the prosecution to disclose exculpatory evidence to a defendant, this court differs from the Supreme Court of the United States in another significant way. In our judgment, the judge's task is to decide what effect the omission might have had on the jury. The law of the Commonwealth thus preserves, as well as it can in the circumstances, the defendant's right to the judgment of his peers. The issue, we think, is not what, if any, impact the late disclosed evidence has on the judge's personal assessment of the trial record. After all, the goal is to determine what would have happened if the prosecution had fulfilled its pretrial duty to disclose the exculpatory evidence and the jury had seen the photographs.[10]

The Supreme Court of the United States, on the other hand, seemingly assigns to the judge the task of assessing the consequences of the prosecutor's omission. See *United States* v. *Agurs*, 427 U.S. 97, 112 (1976). It is, of course, true that in deciding whether a defendant's due process right to a fair trial may have been violated, a court is deciding a question of constitutional law, which is clearly a judicial function. Moreover, the Federal approach is arguably easier to apply. Judges can be more confident in assessing the effect that the omitted evidence would have had on them than in determining its effect on the collective or individual judgments of twelve lay people. On the other hand, the Federal approach seems to treat the involvement of a jury in the trial as irrelevant. We believe that the jury's role should be an acknowledged part of any assessment of a defendant's claim of prejudice caused by the prosecution's omission.

---

specific request, and the standard that is applied when defense counsel made no specific request. That standard in Massachusetts is more favorable to a defendant when defense counsel has made a specific rather than a general request for exculpatory evidence that the prosecution failed to disclose.

[10]If we were dealing with a claim of ineffective assistance of counsel based on the failure of defense counsel to present certain evidence to the jury, our approach also would be to consider the impact of that omission on the jury.

5. *The standard of review.* We come finally in our analysis to the definition of that degree of prejudice or possible prejudice that warrants or requires the granting of a new trial because the prosecution improperly failed to deliver exculpatory evidence to the defense. We have already noted (in part 2 above) that we grant special deference to a decision on a motion for a new trial of the judge who was also the trial judge. We are not concerned here with the standard of review an appellate court would apply in such a situation. We are also not concerned here directly (but see note 9 above) with the standard to be applied when the prosecution has denied the defendant specifically requested exculpatory evidence. In that situation, a defendant need only demonstrate that a substantial basis exists for claiming prejudice from the nondisclosure. See *Commonwealth* v. *Gallarelli, supra* at 20-21; *Commonwealth* v. *Wilson,* 381 Mass. 90, 109 (1980), quoting *United States* v. *Agurs,* 427 U.S. 97, 106 (1976) ("evidence must be disclosed even if it provides only 'a substantial basis for claiming materiality exists' ").

Our concern is with the standard to be applied when the defendant has made no request or, as here, has made only a general request for exculpatory evidence. The Supreme Court opinions refer to the "materiality" of the exculpatory evidence. In this opinion we have generally avoided using the word "material" to describe the importance of evidence to the new trial claim. If the evidence is exculpatory, it is also material in the general evidentiary sense that it is material (and relevant) to an issue in the case. In its opinions in the *Agurs* and *Bagley* cases, the Supreme Court has not used the word "material" in its ordinary, evidentiary sense. To that Court, evidence is material in the sense that its absence mattered or might have mattered in the trial of the case. We prefer to refer in standard common law terms to the degree of prejudicial effect, rather than materiality, of the improper nondisclosure of exculpatory evidence.

Our common law standard for the granting of a new trial and our standard for measuring the consequences of the ineffectiveness of defense counsel provide the appropriate guide

for determining whether the nondisclosure of evidence re-
quires the allowance of a new trial motion. See *Common-
wealth* v. *Daye*, 411 Mass. 719, 734 (1992) (new trial stan-
dard); *Commonwealth* v. *Grace*, 397 Mass. 303, 306 (1986)
(same); *Commonwealth* v. *Wright*, 411 Mass. 678, 681
(1992) (ineffective assistance of counsel standard); *Common-
wealth* v. *Satterfield*, 373 Mass. 109, 115 (1977) (same).
The judge must determine whether there is a substantial risk
that the jury would have reached a different conclusion if the
evidence had been admitted at trial. *Commonwealth* v.
*Grace, supra.* Would it have been a real factor in the jury's
deliberations? *Id.* This test is substantially the same as the
*Saferian* ineffective assistance of counsel standard: "whether
[defense counsel's omission] has likely deprived the defend-
ant of an otherwise available, substantial ground of defence."
*Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). That
standard, which is not explicitly constitutionally based, was
replicated in another opinion of Justice Kaplan in the follow-
ing words: "there ought to be some showing that better work
[of counsel] might have accomplished something material for
the defense." *Commonwealth* v. *Satterfield, supra.*

The application of the common law standard that we have
adopted requires a careful review of the trial court proceed-
ings to determine whether there is a substantial chance that
the jury might not have reached verdicts of guilty if the un-
disclosed evidence had been introduced in evidence.[11] In
terms of the case before us, the issue is whether the defend-
ant was denied a substantial factual basis for contending to
the jury that the victim misidentified him.

We find this standard to be clearer and fairer than the
*Agurs* general request test, which is whether the undisclosed
evidence creates a "reasonable doubt that did not otherwise
exist." *United States* v. *Agurs, supra* at 112. Our standard
recognizes the role of the jury. It also does not mandate, as a

[11]We see no need to express this standard in State constitutional terms.
Because it is more favorable to defendants than the Federal Constitutional
standard, the common law standard will be the controlling one. Cf. *Com-
monwealth* v. *Charles*, 397 Mass. 1, 14-15 (1986).

condition of the granting of a new trial, that a judge con-
clude that a reasonable doubt would have been created if the
undisclosed evidence had been before the jury. It is enough
that, on a full and reasonable assessment of the trial record,
the absent evidence would have played an important role in
the jury's deliberations and conclusions, even though it is not
certain that the evidence would have produced a verdict of
not guilty.

If the undisclosed evidence is cumulative, if it lacks credi-
bility, or if, in an over-all assessment, it does not carry a
measure of strength in support of the defendant, the failure
to disclose that evidence does not warrant the granting of a
new trial. If, however, the undisclosed evidence is more credi-
ble than any other evidence on the same factual issue and
bears directly on a crucial issue before the jury, such as the
credibility of an important prosecution witness, that evidence
would have been a real factor in the jury's deliberations, and
its presence before the jury might have accomplished some-
thing material for the defense.

6. *Conclusion.* From what we have said, it follows that the
nondisclosure of the photographs requires the ordering of a
new trial. The frontal photograph of the defendant's face was
authentic and incontestably showed that the defendant had a
moustache. The photograph was made by the Cambridge po-
lice and, because of its unquestionable weight and reliability,
was not "merely cumulative" of the testimony of the defend-
ant's wife that he had a moustache on the day of the crimes.
Although the fact that the defendant had a moustache does
not disprove his commission of the crimes, it casts doubt on
the identification of the defendant as the attacker because it
demonstrates that the victim and other witnesses were unde-
niably wrong in one aspect of their sworn identification testi-
mony. Consequently the photograph showing the defendant
with a moustache would have been a real factor in the jury's

deliberations, and its introduction in evidence might have accomplished something material for the defense.

*Order allowing motion for*
*new trial affirmed.*