BUDD, J.
**597 *700 The defendant, Richard Holbrook, Jr., was convicted by a jury of murder in the first degree on the theories of extreme atrocity or cruelty and felony-murder in connection with the death of Michael Auger.[1] The defendant appeals from his convictions, and from the denials of his posttrial motions for discovery, for a new trial, and for an evidentiary hearing on his first motion for a new trial. He also asks us to exercise our authority under G. L. c. 278, § 33E, to reduce his murder conviction or to order a new trial.
After full consideration of the record and the defendant's arguments, we affirm the defendant's convictions and decline to grant extraordinary relief pursuant to G. L. c. 278, § 33E. However, for the reasons discussed infra, we reverse the order denying the defendant's motion for third-party discovery, we vacate the orders denying the defendant's motions for a new trial, and we remand for an evidentiary hearing on the defendant's bid for a new trial.
1. Background. a. Facts adduced at trial. We summarize the facts presented at trial in the light most favorable to the Commonwealth, reserving certain details for discussion of specific issues.
On November 27, 2006, the Monday after Thanksgiving, the victim was found dead in his home, lying face down in a pool of blood. The autopsy revealed that the victim died from skull fractures and a brain laceration caused by three "chop wounds" to his head, likely from a blunt instrument with sharp edges. His pockets had been cut open, his home was partially ransacked, and his computer and "webcam" were found in the bathtub, where they **598 had been submerged in water.[2] No murder weapon was recovered. The victim was known to carry large sums of cash on his person; no money was recovered from his person or his home during the investigation. In addition to money being missing, one of the victim's two motor vehicles, a Ford pickup truck, was unaccounted for. The police recovered fingerprints on the doorknob to the room where the victim's body was discovered, deoxyribonucleic acid on the victim's wallet, and four palm prints in the victim's vehicle.[3] A forensic examination of the computer's hard drive revealed that the computer had been shut down abruptly on November 26 at approximately 12:23 P.M. As discussed in more detail infra, the Commonwealth's computer expert testified that there was nothing of evidentiary value found on the hard drive.
The defendant, who was homeless at the time of the incident, had been raking leaves at the victim's home the Friday prior to the murder. On Sunday morning, the day before the victim was discovered, an acquaintance of the victim who was at the victim's home saw a man arrive who generally matched the defendant's description. [4]
*701 This acquaintance subsequently picked the defendant out of a photographic array. The victim's mother, whose property abutted that of the victim and who had observed the defendant with the victim on the Friday prior to the murder, also reported seeing an individual matching the defendant's description[5] at the victim's home on Sunday morning. She observed the individual, wearing the same clothing combination as the defendant had worn on Friday, rummaging about in the victim's automobile and going in and out of the victim's home, but she saw no sign of the victim.
That same Sunday, a third witness observed an individual of **599 similar description[6] put something into the victim's truck, return to the victim's home, and then depart in the truck. Soon thereafter, a security camera recorded footage of a truck matching the description of the victim's truck in the parking lot of a nearby grocery store. The security camera footage shows an individual generally matching the defendant's description exchange a large number of coins for paper currency using a coin exchange kiosk in that store.
The next day, the victim's truck was found in a parking lot approximately three miles from the grocery store. That same day, the defendant was observed purchasing items with a large amount of cash, and he later stayed in a motel for several nights, which was unusual for him.
Investigators interviewed the defendant within days of the killing; the defendant maintained his innocence and claimed to have last seen the victim when he raked leaves at the victim's home on the Friday before the murder. At trial, the defendant mounted an unsuccessful third-party culprit defense, implying throughout the trial that the victim's alleged former boyfriend, Sean Meagher, was the killer.
b. Third-party culprit evidence. Sean Meagher, who lived with the victim for approximately two years,[7] testified that although the two slept in the same bed, they did not have a romantic relationship. Meagher further testified that he had communicated with the victim by electronic mail (e-mail) shortly after he had moved out of the victim's home, but that he had not seen the victim since October 2006. Finally, Meagher testified that, aside from going grocery shopping, he did not leave his home at all during the weekend after Thanksgiving in 2006.
**600 Not presented to the jury was the fact that, during the investigation, two witnesses provided information to police that *702 contradicted Meagher's story. Paul Williams informed investigators that he saw Meagher at the victim's home on Saturday, two days prior to the victim's body being discovered. In addition, Ian Anderson told police that Meagher and the victim had been involved romantically and that, on that same Saturday, the victim had mentioned to Anderson that Meagher had been sending e-mail messages to the victim "constantly" in an attempt to extort money from him.[8]
Investigators questioned Meagher on the same day that Williams spoke to the police[9] but prior to speaking with Anderson; no one conducted a follow-up interview with Meagher based on the information those two witnesses provided. Nor did investigators seek to obtain and compare Meagher's fingerprints to the unknown prints recovered from the victim's wallet and from the doorknob to the room where the victim's body was discovered.
With regard to data recovered from the victim's computer, the Commonwealth represented to the court, the defendant, and the jury that there was nothing of evidentiary value found on the hard drive. However, the defendant subsequently learned through posttrial discovery that the hard drive contained outgoing e-mail messages dated between September 2005 and July 2006 that were sent from the victim to Meagher or that referenced Meagher. In them, the victim wrote that he was "going crazy thinking of [Meagher]" and that he "just want[ed] the past back." The victim further wrote, "it[']s about forgiveness and forgetting, the past is still with us, if you want to face it and come back we can get through it." These e-mail messages contradicted Meagher's testimony that he and the victim had a "friendly" relationship and that he and the victim were not romantically involved.
**601 c. Postconviction proceedings. Following his convictions, and after obtaining new counsel, the defendant filed a motion for a new trial predicated upon trial counsel's ineffective assistance with regard to, among other things, counsel's failure to obtain a forensic examination of the data from the hard drive of the victim's computer, and failure to request fingerprints from Meagher to compare them with unknown fingerprints recovered from the crime scene.[10]
In support of his motion, the defendant obtained leave to have an expert examine the computer's hard drive, resulting in the recovery of the outgoing e-mail messages discussed supra. The defendant subsequently *703 amended his motion for a new trial to reference this newly discovered evidence and to allege prosecutorial misconduct based on the Commonwealth's failure to provide the e-mail messages to the defense prior to trial as an additional ground for relief. The defendant also sought permission to request from third-party e-mail providers any additional e-mail messages from the victim's accounts sent in 2005 and 2006 either that were sent between the victim and Meagher or that referenced Meagher. This motion was denied. The judge also denied the defendant's request for an evidentiary hearing, as well as the underlying motion for a new trial. Upon obtaining different appellate counsel, the defendant filed a second motion for a new trial in which he asserted as grounds for relief additional instances of ineffective assistance of counsel, including trial counsel's failure to mount a robust third-party culprit defense and Bowden defense, among other things.[11] Commonwealth v. Bowden, 379 Mass. 472, 485-486, 399 N.E.2d 482 (1980). This motion also was denied.
2. Issues on direct appeal. On direct appeal, the defendant claims that the Commonwealth committed reversible error by violating the defendant's right to confront witnesses against him, **602 by improperly leading a witness on redirect examination, and by making an improper closing argument.[12] Upon review, we find no reversible error with regard to any of these issues.
a. Confrontation clause. When the victim's body was discovered, his home had been partially ransacked and his computer and webcam were found in the bathtub, where they had been submerged in water. At trial, Michael Perry, the Commonwealth's computer forensic examiner, testified that a different expert had analyzed the contents of the computer's hard drive. On redirect examination, when asked, "It's fair to say that from the reports nothing of evidentiary value was found in the analysis of the hard drive; is that correct?" Perry responded, "That's correct." The defendant argues that Perry's testimony violated the defendant's confrontation rights. We agree.
An expert may testify as to his or her opinion if that opinion is based on facts the expert personally observed, facts admitted in evidence, or facts that would be independently admissible. Commonwealth v. Nardi, 452 Mass. 379, 388, 893 N.E.2d 1221 (2008). Here, Perry did not present his opinion at all; instead, he testified as to the contents of a report by a different expert, who did not testify and whose report was not admitted as evidence. Perry's statement was thus inadmissible hearsay. See Commonwealth v. Greineder, 464 Mass. 580, 588-592, 984 N.E.2d 804, cert. denied, 571 U.S. 865, 134 S.Ct. 166, 187 L.Ed.2d 114 (2013), citing Nardi, supra at 392, 893 N.E.2d 1221 ("expert's testimony to the fact of a nontestifying analyst's test results is hearsay"); Commonwealth v. Cohen, 412 Mass. 375, 393, 589 N.E.2d 289 (1992) (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial ... offered in evidence to prove the truth of the matter asserted" [citation omitted] ).
*704 Further, the defendant was denied an opportunity to cross-examine the expert who performed the analysis on the computer's hard drive. See Commonwealth v. Barbosa, 457 Mass. 773, 784, 933 N.E.2d 93 (2010), cert. denied, 563 U.S. 990, 131 S.Ct. 2441, 179 L.Ed.2d 1214 (2011).
The defendant's trial counsel did not object to Perry's testimony; thus, we review the error for a substantial likelihood of a miscarriage of justice. Commonwealth v. Evans, 438 Mass. 142, 152-153, 778 N.E.2d 885 (2002), cert. denied, 538 U.S. 966, 123 S.Ct. 1763, 155 L.Ed.2d 521 (2003). Because contents of the computer's hard drive "had no bearing on the key issue at trial," and because the defendant's counsel was able to cross-examine Perry effectively on his failure to examine independently **603 the contents of the hard drive to support the theory that the police did not perform a thorough investigation, we conclude that the improperly admitted statement did not create a substantial likelihood of a miscarriage of justice. See Commonwealth v. Phim, 462 Mass. 470, 479-480, 969 N.E.2d 663 (2012) (hearsay testimony had no bearing on key issue at trial: "whether the defendant in fact participated in the shooting"). Compare Commonwealth v. Jones, 472 Mass. 707, 717-719 & n.4, 37 N.E.3d 589 (2015).
b. Redirect examination of detective. The defendant also claims on appeal that the Commonwealth improperly led a police detective through redirect testimony so as to conceal the fact that Williams reported seeing Meagher at the victim's home on the Saturday prior to the victim being discovered dead. This argument is without merit because, had the Commonwealth attempted to elicit such testimony from the detective, it would have been inadmissible hearsay. See Mass. G. Evid. § 802 (2019). In any case, the defendant could have called Williams to the stand to testify as to who and what Williams saw that day. That trial counsel chose not to do so is an issue raised by the defendant in his second motion for a new trial. See part 3.c.i, infra. As for the prosecutor's questioning of the detective, we see no error.
c. Prosecutor's closing argument. The defendant argues that the prosecutor erred in two areas during her closing argument. First, she highlighted Perry's inadmissible hearsay testimony regarding the contents of the computer hard drive:
"Ladies and gentlemen, you heard the testimony from Michael Perry. He told you that although the hard drive had been submerged in water, everything was still able to be retrieved off of that computer. They were still able to browse web sites and to check e-mail, and he told you that there was nothing of any evidentiary value on that computer."
Because the defendant timely objected, we review this statement for prejudicial error. See Commonwealth v. Wilson, 427 Mass. 336, 350-351, 693 N.E.2d 158 (1998). Regardless of whether the prosecutor's statement was accurate, we conclude that because the contents of the computer's hard drive were at best a collateral matter and did not go to the heart of the issues at trial, the error was not prejudicial. See ibr.US_Case_Law.Schema.Case_Body:v1">id., quoting Commonwealth v. Santiago, 425 Mass. 491, 500, 681 N.E.2d 1205 (1997), S.C., 428 Mass. 39, 697 N.E.2d 979, cert. denied, 525 U.S. 1003, 119 S.Ct. 514, 142 L.Ed.2d 426 (1998). Compare **604 Commonwealth v. Alvarez, 480 Mass. 299, 305-307, 103 N.E.3d 1202, S.C., 480 Mass. 1015, 103 N.E.3d 1225 (2018) (factually incorrect statement in prosecutor's closing argument was prejudicial error because statement went to "heart of the case").
The defendant also argues that it was improper for the prosecutor to reference *705 the fact that the defendant had no money prior to the murder, suggesting a motive to rob and kill the victim.[13] The defendant did not object to this portion of the closing argument; we therefore review to determine whether the prosecutor's statements were error and, if so, whether that error created a substantial likelihood of a miscarriage of justice. See Commonwealth v. Salazar, 481 Mass. 105, 116, 112 N.E.3d 781 (2018).
"In closing argument, '[p]rosecutors are entitled to marshal the evidence and suggest inferences that the jury may draw from it.' " Commonwealth v. Roy, 464 Mass. 818, 829, 985 N.E.2d 1164 (2013), quoting Commonwealth v. Drayton, 386 Mass. 39, 52, 434 N.E.2d 997 (1982), S.C., 450 Mass. 1028, 879 N.E.2d 1240 (2008). Such inferences need only be reasonable and possible based on the evidence before the jury. Roy, supra. The evidence presented included testimony that when the defendant was raking leaves at the victim's home on that Friday, he asked the victim's brother for a cigarette because "he was supposed to get paid that night." The jury also heard evidence that the victim was known to carry large sums of cash on his person, that when his body was discovered his pant pockets had been slashed open and his wallet had been emptied, and that no money was discovered in the home. In addition, the jury heard evidence that the **605 defendant made a convenience store purchase with a large sum of cash and thereafter stayed at a motel, which was unusual for him. It was therefore permissible for the prosecutor to ask the jury to infer that the defendant did not have any money prior to the killing and that money was his motive for robbing and killing the victim. Roy, supra.
3. Appeal from denial of posttrial motions. Consolidated with his direct appeal are the defendant's appeals from the denials of his posttrial motions for third-party discovery, for a new trial, and for an evidentiary hearing on his bid for a new trial.
a. Motion for third-party discovery. After his convictions and based on the recovered outgoing e-mail messages from the computer's hard drive, the defendant sought third-party discovery from certain e-mail service providers for the production of additional e-mail messages sent in 2005 and 2006 that were (1) between the victim and Meagher, (2) between the victim and others that mention Meagher, and (3) between Meagher and others that mention the victim. The motion was denied.
"Posttrial discovery may be authorized where affidavits filed by the moving party 'establish a prima facie case for relief.' Mass. R. Crim. P. 30 (c) (4) [, as appearing in 435 Mass. 1501 (2001)]."
*706 Commonwealth v. Sealy, 467 Mass. 617, 628-629, 6 N.E.3d 1052 (2014), citing Commonwealth v. Daniels, 445 Mass. 392, 407, 837 N.E.2d 683 (2005). "To meet the prima facie case standard for discovery under a motion for a new trial based on newly discovered evidence, a defendant must make specific, not speculative or conclusory, allegations that the newly discovered evidence would have 'materially aid[ed] the defense against the pending charges,' Commonwealth v. Tucceri, 412 Mass. 401, 405, 589 N.E.2d 1216 (1992), and that this evidence, if explored further through discovery, could yield evidence that might have 'played an important role in the jury's deliberations and conclusions, even though it is not certain that the evidence would have produced a verdict of not guilty.' " Daniels, supra. In other words, "the defendant must make a sufficient showing that the discovery is reasonably likely to uncover evidence that might warrant granting a new trial." Sealy, supra at 629, 6 N.E.3d 1052, quoting Daniels, supra.
The defendant claimed that the e-mail messages he sought would have potentially impeached the credibility of Meagher by demonstrating that, contrary to Meagher's testimony, Meagher and the victim had had a romantic relationship and that Meagher may have had a motive to harm the victim. The judge denied the motion, concluding that the requested e-mail messages "would **606 likely be duplicative of the messages already in [the defendant's] possession," and that those messages do not suggest that there was any "active hostility" between Meagher and the victim immediately prior to the victim's murder. We are sensitive to a trial judge's broad discretion in deciding postconviction discovery requests, Tucceri, 412 Mass. at 409, 589 N.E.2d 1216 ; however, we conclude that the defendant's motion for third-party discovery should have been allowed. See Daniels, 445 Mass. at 393, 837 N.E.2d 683.
Although the e-mail messages obtained from the computer's hard drive do not indicate that hostility existed between Meagher and the victim at the time they were sent, we note that the e-mail message between the two that was sent closest in time to the murder is dated November 18, 2005 -- over one year prior to the murder.[14] Thus, the e-mail messages recovered reveal nothing about whether additional messages, sent closer in time to the murder, exist and whether they demonstrate any antagonism between the two men. Anderson's statement that Meagher was attempting to extort the victim by way of e-mail prior to the murder provides a "sufficient showing that the discovery is reasonably likely to uncover evidence that might warrant granting a new trial." Daniels, 445 Mass. at 407, 837 N.E.2d 683. We therefore reverse the denial of the defendant's motion for postconviction discovery.
b. Requests for an evidentiary hearing. A judge may decide a motion for a new trial without holding an evidentiary hearing if "no substantial issue is raised by the motion or affidavits." See Mass. R. Crim. P. 30 (c) (3), as appearing in 435 Mass. 1501 (2001). "In determining whether a 'substantial issue' meriting an evidentiary hearing under rule 30 has been raised, we look not only at the seriousness of the issues asserted, but also to the adequacy of the defendant's showing on the issue raised." Commonwealth v. Stewart, 383 Mass. 253, 257-258, 418 N.E.2d 1219 (1981). The motion judge denied the defendant's motion for an evidentiary *707 hearing on his first motion for a new trial and his subsequent request for such a hearing within his second motion for a new trial; however, for the reasons explained infra, we conclude that the issues raised in the defendant's motions for a new trial called for further exploration by way of a hearing.
As discussed in greater detail in the following section, the defendant's motions for a new trial asserted substantial claims of **607 both ineffective assistance of counsel and prosecutorial misconduct. The former claim centered upon trial counsel's failure to investigate, among other things, the computer's hard drive and failure to mount a more robust Bowden and third-party culprit defense. The latter claim was a response to discovering that the Commonwealth failed to turn over the e-mail messages recovered from the victim's computer hard drive (and representing to the defendant, the court, and the jury that "nothing of evidentiary value" was found on the hard drive). The motions were accompanied by affidavits and other documentation that buttressed each of the claims. For example, trial counsel stated by way of affidavit that he never retained a forensic computer expert to independently investigate the hard drive, and that he made a specific discovery request for evidence on the hard drive but never received any such evidence from the Commonwealth. Further, the defendant made a showing that there was an inadequate investigation into Meagher as a third-party culprit by way of an affidavit of Williams and a police report of the interview with Anderson.
The defendant's assertions of ineffective assistance of counsel and prosecutorial misconduct warranted an evidentiary hearing, which would have given the motion judge an opportunity to gather further information to determine the merits of each of the claims. Thus, although whether to hold an evidentiary hearing is a discretionary decision that lies with the motion judge, Commonwealth v. Denis, 442 Mass. 617, 628, 814 N.E.2d 1080 (2004), we are convinced that denying the defendant's motions for a new trial without first conducting an evidentiary hearing in these circumstances was error.
c. Motions for a new trial. As mentioned supra, the defendant argued both ineffective assistance of counsel and prosecutorial misconduct in his motions for a new trial.[15] Although without an evidentiary hearing we are not in a position to come to any conclusions with regard to whether the defendant's trial counsel was ineffective or whether the prosecutor committed misconduct, we comment briefly infra on concerns raised in the defendant's motions.
i. Ineffective assistance of counsel. The defendant's ineffective assistance claim focused on trial counsel's failure to investigate **608 Meagher thoroughly as a third-party culprit, and to mount a robust Bowden defense with the information that counsel did have.
To his credit, defense counsel made a specific pretrial request for data on the computer's hard drive,[16] and at trial, he *708 questioned Meagher about Meagher's relationship with the victim, he elicited from detectives the fact that there was no physical evidence linking the defendant to the crime scene, and he questioned the Commonwealth's computer expert about the expert's failure to check the content of the computer activity just prior to its last shutdown.
However, in his motions, the defendant pointed to a number of ways in which his trial counsel fell short with regard to pretrial investigation and performance during trial. For example, prior to trial defense counsel failed to seek leave to conduct an independent forensic examination of the data from the hard drive of the victim's computer, and failed to request fingerprints from Meagher to compare them with unknown fingerprints recovered from the victim's home.
The defendant also underscored shortcomings in his counsel's performance at trial, including with regard to information provided by Williams and Anderson. Trial counsel did not present to the jury Williams's statement to police that Williams saw Meagher at the victim's home on the Saturday following Thanksgiving, that this information conflicted with Meagher's alibi, and that police did not follow up on this or other information suggesting that Meagher was not truthful with investigators. Had trial counsel done so, it would have bolstered both the defendant's third-party culprit defense and his Bowden defense.
Similarly, with regard to the information that Anderson provided to police about the relationship between Meagher and the victim and Meagher's alleged attempts to extort the victim, trial counsel did not present to the jury the failure of the police to conduct any follow-up investigation in light of Anderson's statement. Trial counsel might have highlighted the fact that there was no additional interview with Anderson or Meagher, no effort to obtain Meagher's fingerprints to compare them with the prints **609 found at the crime scene, and no investigation into Meagher's potential motive to harm the victim, including with respect to e-mail messages sent between the two men to confirm whether Meagher in fact was trying to extort the victim or with respect to Meagher's refuted romantic relationship with the victim. And although the court did not allow trial counsel to call Anderson to testify based on the Commonwealth's objection on hearsay grounds, trial counsel failed to argue the admissibility of Anderson's testimony for the purpose of mounting a Bowden defense, which would have been a proper basis to admit Anderson's testimony. See Commonwealth v. Silva-Santiago, 453 Mass. 782, 802, 906 N.E.2d 299 (2009) (statements are admissible when offered not for truth but to show "police knew of the possible suspect and failed to take reasonable steps to investigate [that information]").
To be sure, additional investigation may not have resulted in the defendant's exoneration -- an argument could be made that Meagher's fingerprints in the victim's home would be expected, as Meagher formerly resided there. Further, witnesses testified that the individual whom they saw in and around the victim's home the day before the victim's body was found was not Meagher. Nevertheless, a Bowden defense is raised for the purpose of demonstrating to the jury that the police "had learned of [third-party culprit information] during the investigation and failed reasonably to act on the information." Id. at 803, 906 N.E.2d 299. "The fact that certain tests were not conducted or certain police procedures not followed could raise a reasonable doubt as to the defendant's guilt in the minds of the jurors."
*709 Bowden, 379 Mass. at 486, 399 N.E.2d 482. This is especially so here, where the evidence against Meagher is similar in weight to the evidence against the defendant. The evidence against both is circumstantial and requires discrediting an alibi; the defendant claimed he was not at the victim's home after raking leaves on Friday despite witnesses identifying him at the home on Sunday, and Meagher claimed he was not at the victim's home at all that same weekend despite Williams identifying him at the victim's home on Saturday.
We do not opine as to whether trial counsel's performance amounted to ineffective assistance of counsel or whether such performance, if ineffective, created a substantial likelihood of a miscarriage of justice; rather, on remand the motion judge, with information obtained from an evidentiary hearing, will be in the **610 best position to make that determination.[17]
ii. Prosecutorial misconduct. After obtaining leave from the court to engage an independent computer expert who recovered certain outgoing e-mail messages from the victim's hard drive, the defendant amended his first motion for a new trial to allege misconduct by the prosecutor for representing to defense counsel that nothing of evidentiary value existed on the victim's computer.
We agree with the defendant that the outgoing e-mail messages recovered from the computer's hard drive were exculpatory in nature. As described supra, the e-mail messages provide a basis from which to conclude that the victim and Meagher had been in an intimate relationship, that Meagher had left the victim, and that the victim wanted Meagher to return to repair the relationship. However, when asked on direct examination about his relationship with the victim, Meagher denied that they had been lovers. Had the Commonwealth turned over the e-mail messages on the hard drive, the defendant could have used them to impeach Meagher's testimony that he and the victim's relationship was "friendly" and not romantic in nature; without them, the defendant had no other means of impeaching Meagher on this fact.[18] ,[19] Compare Commonwealth v. Fuller, 394 Mass. 251, 264, 475 N.E.2d 381 (1985), S.C., 419 Mass. 1002, 643 N.E.2d 36 (1994) (where evidence is cumulative, **611 "courts generally reject the *710 contention that such evidence is material ... so long as the defense had adequate opportunity to impeach the witness by other means" [citation omitted] ). The e-mail messages would have placed Meagher's credibility at issue, thereby strengthening the defendant's third-party culprit theory. Accordingly, the e-mail messages were material and exculpatory. See Commonwealth v. Champagne, 399 Mass. 80, 89, 503 N.E.2d 7 (1987) ("Evidence is exculpatory, for the purpose of assessing whether the prosecution should have disclosed it, if it tends to support the innocence of the accused").
Whether the defendant was prejudiced by the Commonwealth's failure to disclose the e-mail messages is for a motion judge to determine following an evidentiary hearing. We note, however, that the record appears to reflect that the defendant made a specific pretrial request for data recovered from the hard drive.[20] If a motion judge finds that, in fact, the Commonwealth withheld exculpatory evidence despite a specific request for such evidence, he or she will apply the prejudice standard more favorable to the defendant, that is, whether the defendant has demonstrated "that a substantial basis exists for claiming prejudice." Commonwealth v. Camacho, 472 Mass. 587, 598, 36 N.E.3d 533 (2015), quoting Daniels, 445 Mass. at 404-405, 837 N.E.2d 683.
4. Review under G. L. c. 278, § 33E. The defendant asks us to exercise our extraordinary power to grant relief under G. L. c. 278, § 33E. However, the trial record, by itself, does not establish that the defendant is entitled to a new trial or a reduction of the verdict of murder in the first degree. As for the issues raised in the defendant's motions for a new trial, we refrain from making a § 33E determination until the record is fully developed on remand following third-party discovery and an evidentiary hearing with subsequent findings. See Commonwealth v. Bonnett, 472 Mass. 827, 851, 37 N.E.3d 1064 (2015).
5. Conclusion. For the foregoing reasons, the defendant's convictions are affirmed. However, the order denying the defendant's motion for third-party discovery is reversed, as is the order denying the defendant's motion for an evidentiary hearing, and the orders denying the defendant's motions for a new trial are **612 vacated. The case is hereby remanded to the Superior Court to allow the defendant to conduct the requested third-party discovery of e-mail service providers to determine whether additional e-mail messages shedding light on the relationship between Meagher and the victim exist. The defendant shall be given leave to amend his second motion for a new trial to include any information obtained as a result of said discovery requests. Further, an evidentiary hearing shall be held on the defendant's motions for a new trial in order for a motion judge to make factual findings regarding the defendant's claims of ineffective assistance of counsel and prosecutorial misconduct as well as conclusions as to whether the defendant is entitled to a new trial as a result of one or both of these factors, if found. See Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). See also Commonwealth v. Rosario, 477 Mass. 69, 77-78, 74 N.E.3d 599 (2017).
Given the unique posture of this case, if the defendant seeks to appeal from a denial of his motions for a new trial, he need *711 not first petition for leave pursuant to the gatekeeper provision of G. L. c. 278, § 33E. See Bonnett, 472 Mass. at 851, 37 N.E.3d 1064.
So ordered.

The defendant was also convicted of armed robbery and larceny of a motor vehicle.

Although some limited information was accessible, including certain electronic mail (e-mail) messages, discussed infra, the jury were told that there was nothing of evidentiary value on the hard drive.

Testing of this evidence revealed that the defendant was not a contributor to the fingerprint on the doorknob, he was excluded as a source of the deoxyribonucleic acid on the wallet, and he was eliminated as a contributor on the three palm prints that the police were able to analyze.

The witness described the individual as a "tall, kinda skinny" man who was "unshaved" with "really bad, brown, rotten teeth."

The victim's mother described the individual she saw as "tall and thin," and wearing a blue, hooded sweatshirt and a tan-colored Carhartt-brand jacket.

The witness described the individual as having scruff on his chin and wearing a tan-colored Carhartt-brand work coat with a hood pulled over his head.

The jury heard varying testimony about exactly when Sean Meagher lived with the victim. Meagher testified that he "maybe" moved in with the victim sometime in 2003. He then testified that at the time he found out about the victim's murder, he had not lived with the victim for "probably two years, two and a half years maybe." Meagher's former girlfriend testified that she and Meagher started living together in 2005. That testimony, in isolation, places Meagher living with the victim from sometime in 2003 to sometime in 2005. However, on cross-examination, when asked, "So you stayed [at the victim's home] until 2006, fair to say?" Meagher answered in the affirmative. E-mail recovered on the computer's hard drive, discussed infra, suggests that Meagher moved out of the victim's home sometime before September 2005.

Importantly, the jury did not hear from either Paul Williams or Ian Anderson because defense counsel chose not to call Williams to testify, and because the judge precluded defense counsel from calling Anderson to the stand after the Commonwealth objected on relevance and hearsay grounds. As discussed infra, Anderson's testimony would have been admissible under a Bowden defense because, rather than having been offered for its truth, the statement would have been offered to show that the "police knew of the possible suspect and failed to take reasonable steps to investigate [that information]." Commonwealth v. Silva-Santiago, 453 Mass. 782, 802, 906 N.E.2d 299 (2009). See Commonwealth v. Bowden, 379 Mass. 472, 485-486, 399 N.E.2d 482 (1980).

It is unclear from the record whether police interviewed Meagher prior to or after Williams told police that he had seen Meagher at the victim's home.

The defendant also argued that counsel was ineffective for failing to obtain forensic examination of footage from a neighboring surveillance camera as well as the grocery store, failing to obtain forensic examination of the "suggestive nature of the photograph identification process," and failing to obtain the victim's autopsy report to determine whether the victim was sexually active at or about the time of the murder. He does not renew these arguments on appeal.

Although the Commonwealth opposed this second motion on the ground that the arguments were waived, the judge disagreed, noting that defendant's trial counsel and his first appellate counsel were both employed by the Committee for Public Counsel Services. See Commonwealth v. Egardo, 426 Mass. 48, 49-50, 686 N.E.2d 432 (1997).

These issues also were raised in the defendant's second motion for a new trial, in which he claimed that his trial counsel was ineffective for failing to object to certain errors at the time of trial.

The prosecutor stated:
"We know that while the defendant was raking leaves, he bummed some cigarettes off of [the victim's brother]. Recall what his testimony was. The defendant essentially told [the victim's brother] that he didn't have any money of his own to buy cigarettes because his boss owed him money.
"...
"And consider the testimony of [the store clerk] .... [T]his defendant really stood out to her. What also stood out to her was the wad of cash the defendant pulled from his pocket, a wad of cash with hundreds and fifties and twenties. The same person, who three days earlier, didn't have any money to buy cigarettes now all of a sudden has a lot of cash.
"...
"[H]e's gonna go to Plymouth and he's gonna rent a room at a motel. And it's not just some hotel, ladies and gentlemen. It's a hotel that costs $109 a night. This person, again, who three days earlier didn't have enough money to buy cigarettes, is checking into a hotel at $109 a night, racking up the service bills, paying cash."

We also note that the e-mail messages were outgoing only, that is, from the victim to Meagher and not vice versa.

The defendant's second motion for a new trial focused on his counsel's missteps during trial as additional grounds for relief, including but not limited to the issues raised on direct appeal, discussed in part 2, supra.

Although trial counsel apparently made a specific request for "all analysis of the computer hard drive found at the crime scene including but not limited to the content containing the emails and internet searches on the hard drive," the Commonwealth failed to turn over the outgoing e-mail messages recovered from the hard drive. This failure is discussed infra in part 3.c.ii.

Trial counsel submitted an affidavit stating that his failure to raise a robust Bowden defense "was not purposefully done for any strategic reasons." This can be explored further at the evidentiary hearing.

In determining that the defendant was not prejudiced by the Commonwealth's failure to disclose the e-mail messages, the motion judge concluded that "use of the emails to impeach [Meagher] on the issue of whether he and [the victim] had been lovers ... would have been merely cumulative of the evidence heard by the jury that he and [the victim] had an intimate relationship and slept in the same bed for two years." We disagree. The e-mail messages would have provided the defense with powerful evidence with which to impeach Meagher regarding his relationship with the victim and may have led the jury to question the veracity of Meagher's testimony on other matters, including his alibi. Without the e-mail messages, we cannot say that the defense was provided with an "adequate opportunity to impeach [Meagher] by other means" (citation omitted). Commonwealth v. Fuller, 394 Mass. 251, 264, 475 N.E.2d 381 (1985).

The defendant notes that the Commonwealth's failure to disclose the exculpatory e-mail messages on the computer's hard drive was exacerbated by the testimony of the Commonwealth's computer expert, who told the jury that there was nothing of evidentiary value on the hard drive. The prosecutor emphasized this misleading information by stating during closing argument that there was nothing of evidentiary value on the hard drive, including e-mail messages.

In support of his second motion for a new trial, the defendant provided the discovery request that he had filed nearly five months prior to trial, specifically requesting "all analysis of the computer hard drive found at the crime scene including but not limited to the content containing the emails and internet searches on the hard drive."